# BOBBY LEE RAMDASS

## v.

# COMMONWEALTH OF VIRGINIA

Record No. 930693

November 5, 1993

Present: All the Justices

414

Michael S. Arif (Sharon B. Soloway; Martin, Arif, DeWilde & Soloway, on brief), for appellant.

Katherine P. Baldwin, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In September 1992, Bobby Lee Ramdass was indicted for the murder of Mohammad Z. Kayani in the commission of a robbery while armed with a deadly weapon, the robbery of Kayani, and the use of a firearm during Kayani's murder. Prior to a jury trial, Ramdass pled guilty to the robbery of Kayani and, over Ramdass's objection, the court deferred action on his guilty plea.

Thereafter, in a bifurcated trial conducted under the provisions of Code §§ 19.2-264.3 and -264.4, a jury convicted Ramdass of the capital murder of Kayani and fixed his punishment at death predicated upon a finding of "future dangerousness." The jury also convicted Ramdass of the use of a firearm in the commission of Kayani's murder and fixed his punishment at imprisonment for four years.[1]

After the jury returned its guilty verdicts, the court found Ramdass guilty of Kayani's robbery and referred the robbery and weapon convictions to the district probation officer for a presentence investigation and report. Following the jury's verdict of death in the sentencing phase of the capital murder charge, the court referred the case to the district probation officer for "investigation and report before sentencing." Code § 19.2-264.5. Upon consideration of the probation officer's report covering all three charges, the court sentenced Ramdass to life imprisonment upon the robbery charge and imposed the sentences fixed by the jury on the remaining charges.

Ramdass is before the Court for automatic review of his death sentence, and we have consolidated that review with the appeal from his capital murder conviction. Code § 17-110.1.

## FACTS

Because the Commonwealth prevailed in the trial court, we will view the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth. *Parks v. Commonwealth*, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980).

During the night of September 1 and early morning of September 2, 1992, Ramdass and Darrell Wilson, both armed with pistols, were returning home in a car with three other men, Shane Singh, Edward O'Connor, and Candelerio Ramirez, after abandoning a plan to rob

---

[1] The jury was authorized to fix a four-year term of imprisonment for the firearm violation because it was Ramdass's second conviction for that offense. Code § 18.2-53.1.

persons at a Roy Rogers restaurant in Fairfax County. On the way, Ramdass suggested that they rob persons at a 7-Eleven store on Buelah Street in Fairfax County.

Accordingly, near one o'clock on the morning of September 2, the five men entered the 7-Eleven store. Ramdass entered first and "drew" his pistol on Kayani, a 7-Eleven clerk who was behind the cash register. Wilson, who also displayed his pistol, ordered all the customers to lie on the floor and not look at him. The other three men, who were unarmed, took the customers' wallets, money from the cash register, and cigarettes and lottery tickets from the store's stock.

After Ramdass ordered Kayani to open the safe, Kayani knelt down next to the safe and unsuccessfully tried to open it. Ramdass squatted next to Kayani and yelled at him to open the safe "or I'll blow your f——— head off."[2] Wilson fired his pistol at one of the customers on the floor. Immediately thereafter, Singh, standing behind Ramdass, saw Ramdass shoot Kayani in the head on his second attempt to get the weapon to fire.

Just after Ramdass shot Kayani, Ramirez returned from a back room in the store. Ramirez saw Ramdass laughing as he stood over Kayani's body. Later, Ramirez heard Ramdass say that he shot Kayani because he "took too long." Shortly thereafter, Ramirez opened the front door, and Wilson, Singh, and O'Connor ran out. As Ramirez held the door open, he urged Ramdass to "[c]ome on." However, Ramdass was "clicking the gun at the people on the floor" and told Ramirez to "[s]hut up or I'll put one in you." One of the customers also heard the clicking of the gun as Ramdass left.

When they got in the car, Ramirez heard Ramdass ask Wilson, "Why didn't you get rid of the people on the floor?" After the men divided the robbery proceeds at Singh's home, Ramdass told Ramirez, "Don't tell anybody about this [or] I'll kill you and I'll kill your whole family."

Singh, a co-owner of the gun with Ramdass, testified that the gun would not fire unless held at a certain angle because the "bullets" in the chamber were not the right size for the gun. Julian Jay Mason, Jr., a forensic scientist specializing in firearms identification, later

---

[2] Another employee of the 7-Eleven store testified that a clerk could not open the part of the safe containing most of the money because the store manager had the keys.

examined and test fired the gun. Mason testified that the 9 millimeter cartridges Ramdass used in the gun were smaller than the 38 caliber cartridges specified for the gun. Therefore, when the gun's muzzle was pointed down, the 9 millimeter cartridges slid too far forward to be struck by the firing pin. Mason further testified that when the muzzle was pointed up, the cartridge slid back closer to the firing pin, and the gun could be fired.

## ISSUES PREVIOUSLY RESOLVED

Ramdass assigns a number of errors and makes arguments that have been answered in previous decisions of this Court. Ramdass does not offer sufficient reasons to justify a modification of our previously expressed views. Therefore, we will reaffirm our earlier decisions and reject Ramdass's contentions as follows:

A. The court's denial of Ramdass's request for appointment of a medical doctor and an investigator at state expense violated his Fourteenth Amendment Due Process and Equal Protection rights. Answered by O'Dell v. Commonwealth, 234 Va. 672, 686, 364 S.E.2d 491, 499, cert. denied, 488 U.S. 871 (1988); Townes v. Commonwealth, 234 Va. 307, 332, 362 S.E.2d 650, 664 (1987), cert. denied, 485 U.S. 971 (1988); Gray v. Commonwealth, 233 Va. 313, 329-30, 356 S.E.2d 157, 166, cert. denied, 484 U.S. 873 (1987).

B. The court's application of Code § 19.2-264.4(C) in the admission of evidence of unadjudicated criminal conduct in the sentencing phase violates the Eighth and Fourteenth Amendments of the United States Constitution. Answered by Watkins v. Commonwealth, 238 Va. 341, 351-52, 385 S.E.2d 50, 56-57 (1989), cert. denied, 494 U.S. 1074 (1990).

C. The court's admission of evidence of unadjudicated criminal conduct is unconstitutional under any circumstances because of the requirement of a "greater degree of reliability where the death sentence is imposed." Answered by Satcher v. Commonwealth, 244 Va. 220, 228, 421 S.E.2d 821, 826 (1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1319 (1993), and Stockton v. Commonwealth, 241 Va. 192, 210, 402 S.E.2d 196, 206, cert. denied, 502 U.S. ___, 112 S.Ct. 280 (1991).

D. The court's refusal of Ramdass's proffered jury instruction that required proof of unadjudicated criminal conduct beyond a

reasonable doubt violated his due process rights. Answered by *Stockton*, 241 Va. at 210, 402 S.E.2d at 206.

E. The court's denial of Ramdass's motion to declare unconstitutional the provision of Code § 53.1-233 providing for execution of prisoners by electrocution violates the prohibitions against cruel and unusual punishment contained in the United States and Virginia Constitutions. Answered by *Poyner v. Commonwealth*, Order entered in Record Number 930301 on March 10, 1993, and *Boggs v. Commonwealth*, Order entered in Record Number 900967 on July 18, 1990 (both orders rejected same arguments of unconstitutionality that used essentially same background materials relied upon by Ramdass as to execution by electrocution generally and "as carried out in Virginia's electric chair"); *Stockton v. Commonwealth*, 241 Va. at 215, 402 S.E.2d at 209-10; *Martin v. Commonwealth*, 221 Va. 436, 439, 271 S.E.2d 123, 125 (1980); *Hart v. Commonwealth*, 131 Va. 726, 743, 109 S.E. 582, 587 (1921).

## ASSIGNMENTS OF ERROR WAIVED

■ Ramdass did not brief, and has therefore waived, Assignments of Error Numbers Seven, Seventeen, Eighteen, Nineteen, Twenty, and Twenty-four. Rule 5:27(e).

## PRETRIAL MOTIONS

### *Motion for Bill of Particulars*

■ Ramdass filed a motion for a bill of particulars seeking specific details of the evidence in support of the Commonwealth's case. However, the indictment described the offenses charged in conformity with the requirements of Code § 19.2-220 and, therefore, was sufficient to give Ramdass "notice of the nature and character of the offense[s] charged so he [could] make his defense." *Satcher*, 244 Va. at 231, 421 S.E.2d at 828 (quoting *Wilder v. Commonwealth*, 217 Va. 145, 147, 225 S.E.2d 411, 413 (1976)). Under these circumstances, the trial court did not err in denying Ramdass's motion for a bill of particulars.

### *Motion for Discovery of Accomplices's Polygraph Tests*

Ramdass contends that the trial court erred in denying both his motion for discovery of the questions, answers, and results of his

accomplices's polygraph examinations and his subsequent oral motion for the court's *in camera* inspection of those tests. According to Ramdass, the Commonwealth was constitutionally required to produce these tests because they may have contained "potentially exculpatory evidence."[3] We do not agree.

■ Fairness to the defendant requires the Commonwealth's pretrial production of exculpatory evidence under the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). And evidence that impeaches the credibility of a Commonwealth witness is exculpatory evidence. *Robinson v. Commonwealth*, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986) (citing *United States v. Bagley*, 473 U.S. 667, 676-77 (1985)). However, there is no general constitutional right to discovery in a criminal case, and *Brady* did not establish one. *Lowe v. Commonwealth*, 218 Va. 670, 679, 239 S.E.2d 112, 118 (1977), *cert. denied*, 435 U.S. 930 (1978) (citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).

■ In order to establish that the Commonwealth has violated a defendant's *Brady* rights, the record must indicate that the undisclosed evidence was in fact exculpatory and material either to guilt or to punishment. *Lowe*, 218 Va. at 679, 239 S.E.2d at 118. Nothing in this record indicates either that the Commonwealth's Attorney has withheld exculpatory information or that the answers given by Ramdass's accomplices in their polygraph tests would be favorable to him and material to his guilt or punishment.[4] Ramdass's speculation that such statements might contain "potentially exculpatory evidence" imposes neither a duty of disclosure upon the Commonwealth, *id.*, nor a duty of inspection *in camera* by the court. *United States v. Navarro*, 737 F.2d 625, 631-32 (7th Cir.), *cert. denied*, 469 U.S. 1020 (1984).

■ During oral argument, counsel for Ramdass contended that without access to the polygraph examinations the defense could not

---

[3] Ramdass concedes correctly that conclusory statements that any of these co-defendants may have been "deceptive" or "flunked" the polygraph examination are not admissible. *Robinson v. Commonwealth*, 231 Va. 142, 156, 341 S.E.2d 159, 167 (1986).

[4] The Commonwealth's Attorney advised Ramdass's attorney prior to trial that the answers of O'Connor, one of his accomplices, were deceptive in that he attempted to minimize his role in the 7-Eleven incident. The Commonwealth's Attorney also informed Ramdass's attorney of three persons who allegedly would provide an alibi defense, but he also advised that they had made inconsistent statements. We note that Ramdass did not call any of those persons as witnesses.

show that these records contained exculpatory evidence which was material to guilt or punishment. Although a defendant need not make an avoval of *how* a witness might testify in order to obtain pretrial discovery of a witness's statement to police, he should describe the events to which the witness might testify and the relevance of such matters to the crime charged in order to demonstrate its required constitutional materiality to his guilt or punishment. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 871-72 (1982). Ramdass's only claims of materiality are: (1) that because he was denied access to the polygraph examinations, "meaningful cross-examination" of Singh and Ramirez was "straightjacketed," and (2) that he *might* have been able to impeach their credibility with "any additional information gleaned through investigation of leads created by the polygraph facts." However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976).

■ Considering Ramdass's guilty plea to Kayani's robbery and Singh's uncontradicted testimony that Ramdass shot Kayani, we conclude that Ramdass has not established the necessary constitutional materiality to require the pretrial production of the polygraph tests either for his inspection or for the court's *in camera* inspection. Hence, the trial court did not err in denying Ramdass's discovery motions relating to those tests.

### *Ramdass's Motion for Ex parte Hearing Relating to Experts*

■ Ramdass, an indigent, maintains that the court erred in denying an *ex parte* hearing of his motion for the appointment of a medical doctor and a private investigator to assist in his defense.[5] Ramdass argues that because he must make "a threshold showing of the significance of the expert's testimony" to obtain such appointments, an *ex parte* hearing is required to avoid a disclosure of his potential defenses to the Commonwealth's Attorney. Accordingly, Ramdass argues, the court's denial of his request violated his Fifth Amendment right against self-incrimination, his Sixth Amendment right to confrontation, his Fourteenth Amendment right to due

---

[5] On brief, Ramdass contends that the court erred in failing to appoint "other expert witnesses," but the transcript does not reveal that he asked for any experts other than a doctor and a private investigator. Accordingly, we do not consider this contention. Rule 5:25.

process, and "Article I Section 8 and 9 of the Virginia Constitution."

However, Ramdass offers no persuasive argument or authority supporting this contention. Indeed, none of the cases he cites deals with the constitutional rights he asserts in this case. Most of those cases deal with the application of a federal statute creating a right to an *ex parte* hearing when an indigent requests expert assistance in a federal action. 18 U.S.C § 3006A(e) (1993).

We perceive no reason to depart from our previous holding that there is no constitutional right to such a hearing. *O'Dell*, 234 Va. at 686, 364 S.E.2d at 499. Hence, we find no merit in this assignment.

## THE ROBBERY CHARGE

Before the venire entered the courtroom on the first day of trial, Ramdass pled guilty to the robbery of Kayani, offered to make a proffer of the evidence of his guilt and to waive his right to a presentence report, and moved the court to find him guilty and immediately sentence him. The Commonwealth's Attorney objected, contending that an immediate adjudication of guilt might raise an issue of Ramdass's right to assert a double jeopardy defense to the remaining charges. The court denied Ramdass's motion, deferred its adjudication of guilt and sentencing, and proceeded with the trial of the remaining charges.

After the Commonwealth rested its case in chief in the guilt phase of the trial, the court denied Ramdass's renewed motion for an adjudication of guilt on the robbery charge. When the jury returned a guilty verdict on the capital murder and weapon charges, the court found Ramdass guilty of all three charges. Ramdass again waived his right to a presentence report and moved the court to sentence him immediately. The court denied that motion. Instead, it referred the matter to a probation officer for a presentence investigation and report pursuant to the provisions of Code § 19.2-299.

According to Ramdass, the court violated his Fifth and Fourteenth Amendment rights in denying these motions. Had there been an immediate adjudication of his guilt in Kayani's robbery during

the sentencing phase, Ramdass claims that he could have established his ineligibility for parole because of his three separate convictions of armed robbery. Code § 53.1-151(B1).[6] However, we need not decide whether the court abused its discretion in deferring Ramdass's conviction, because the court *had* found Ramdass guilty of the robbery before the sentencing phase.

█ Evidence of Ramdass's parole ineligibility was inadmissible in any event. We repeatedly have held that such evidence of parole ineligibility is inadmissible in capital murder cases. *Wright v. Commonwealth*, 245 Va. 177, 197, 427 S.E.2d 379, 392 (1993). We perceive no reason to modify our views on this issue and, therefore, we find no violation of Ramdass's constitutional rights in delaying his adjudication of guilt.

## GUILT PHASE

### *Limitation of Cross-Examination*

█ Ramdass contends that the court erroneously restricted his right of cross-examination in refusing to permit impeachment of Singh and Ramirez by questioning their involvement in several unadjudicated crimes. It is well settled in Virginia that a litigant's right to impeach the credibility of adverse witnesses by showing their participation in criminal conduct has been confined to questions about a conviction for a felony, perjury, and a misdemeanor involving moral turpitude. Code § 19.2-269 (felony and perjury; first enacted in 1919, Code § 4779 (1919)); *Clark v. Commonwealth*, 202 Va. 787, 790, 120 S.E.2d 270, 272 (1961) (misdemeanor involving moral turpitude). This limitation upon a defendant's impeachment rights is a reasonably necessary measure to restrict the scope of a criminal trial. As we pointed out in *Clark*, admission of unadjudicated crimes for purposes of general impeachment of a witness would "lead to confusion in directing the jury's attention to collateral matters and away from the issues of the case." *Id.* at 790, 120 S.E.2d at 273.

Nevertheless, Ramdass claims that the trial court's adherence to this settled practice violated his confrontation rights under the Sixth Amendment of the United States Constitution and Article I, § 8 of

---

[6] As pertinent, Code § 53.1-151(B1) provides that: "Any person convicted of three separate felony offenses of . . . robbery by the presenting of firearms or other deadly weapon . . . shall not be eligible for parole."

the Virginia Constitution. He cites no authority to support such an expansive application of these rights, and we have found none. *Cf. Brown v. Commonwealth*, 246 Va. 460, 464-65, 437 S.E.2d 563, 564-65 (1993) (this day decided). Accordingly, we conclude that the trial court did not err in this limitation of Ramdass's cross-examination.

■ Next, Ramdass maintains that the trial court erred in refusing to permit him to ask Ramirez: "Did it surprise you that there were no fingerprints found [in the back room where Ramirez said he was when Ramdass shot Kayani]?" We find no abuse of the court's discretion in excluding such evidence; whether Ramirez was surprised would not be probative.

*Instructions*

■ Ramdass contends that the trial court erroneously included the emphasized language in a part of the burden of proof instruction: "*The jury must limit its consideration to the evidence introduced*, and you are not to go outside the evidence to hunt up doubts, nor must you entertain doubts which are speculative or conjectural." According to Ramdass, this emphasized language specifically precluded the jurors from using their common sense in deciding whether the Commonwealth had carried its burden of proof. We do not agree.

The language complained of must be read in the context of the sentence and of the instruction relating to the jury's duty to weigh the evidence. Among other things, that instruction specifically told the jurors that "you are entitled to use your common sense in judging any testimony." Reading the instructions as a whole, we conclude that the language complained of neither expressly nor impliedly precluded the jurors from using their common sense in deciding whether the Commonwealth had proved its cases.

■ Next, Ramdass argues that the court erred in refusing his proposed finding Instruction A. Ramdass's proposed instruction included first degree murder as a lesser-included offense of the capital murder charge should the Commonwealth fail to prove that the killing was "willful, deliberate and premeditated." We find no merit in this argument.

■ We do not agree with Ramdass's conclusory statements that his proposed instruction provided a "clearer and more precise connection between the two crimes, which actually allows the jury to

weigh the offenses against each other in a more balanced and coherent manner, and a more accurate statement of the law.'' The court granted separate finding instructions in essentially the same language as Ramdass's proposed instruction. One instruction dealt with capital murder and the other dealt with first degree murder. Since Ramdass's tendered instruction essentially duplicated those instructions, the court did not abuse its discretion in refusing to grant a duplicative instruction. *Eaton v. Commonwealth*, 240 Va. 236, 255, 397 S.E.2d 385, 396 (1990), *cert. denied*, 502 U.S. ___, 112 S.Ct. 88 (1991).

Next, Ramdass complains that the court erred in failing to grant his tendered Instruction H that read:

If a witness makes inconsistent statements at different stages of his testimony in regard to the subject matter under investigation, this does not render his testimony nugatory, and it is the province of the jury to pass upon such inconsistent statements and to give or withhold its assent to the truth of the particular statement.

Instead, the court granted the Commonwealth's Instruction I that read:

If a witness makes a statement at this trial inconsistent, contradictory, conflicting or materially different from that made on other occasions, it does not render his testimony nugatory, but it is the duty of the jury to determine the truth or falsity of the statements made in this trial and not elsewhere.

We find no abuse of discretion in the trial court's refusal to grant the tendered instruction, which essentially duplicated the language of granted Instruction I.

### SENTENCING PHASE

Ramdass argues that the court erred in refusing to respond to the jury's question, ''[i]f the defendant is given life, is there possibility of parole at some time before his natural death?'' Ramdass maintains that his parole ineligibility should have been disclosed to the jury in answer to this question. Such a response, he contends, would have aided the jury in choosing the appropriate sentence.

We repeatedly have held that a jury should not hear evidence of parole eligibility or ineligibility because it is not a relevant consideration in fixing the appropriate sentence. *Wright*, 245 Va. at 197, 427 S.E.2d at 392. Ramdass advances no persuasive reason, and we perceive none, to modify our previous rulings. Accordingly, we conclude that the court correctly refused to advise the jury about Ramdass's ineligibility for parole. We also conclude that the court, using the language suggested in *Hinton v. Commonwealth*, 219 Va. 492, 495, 247 S.E.2d 704, 706 (1978), as an appropriate response to such a question, correctly told the jury that "you should impose such sentence as you feel is just under the evidence and within the instructions of the court. You are not to concern yourselves with what may happen afterwards."

## SENTENCE REVIEW

As required by Code § 17-110.1(C), we review the record to determine whether Ramdass's death sentence (1) was imposed under the influence of passion, prejudice, or any other arbitrary factor, or (2) is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

Although Ramdass does not contend that the death sentence was imposed in violation of either of these factors, we have examined the records in all capital murder cases accumulated by this Court pursuant to Code § 17-110.1(E), paying particular attention to those cases in which the underlying felony was robbery and the death penalty was based solely on "future dangerousness." These cases are compiled in *Yeatts v. Commonwealth*, 242 Va. 121, 143, 410 S.E.2d 254, 267-68 (1991), *cert. denied*, ___ U.S. ___, 112 S.Ct. 1500 (1992).

Our review of those records, as well as the records of cases in which life imprisonment was imposed in similar cases, leads us to the conclusion that Ramdass's death sentence was neither excessive nor disproportionate to sentences generally imposed by other sentencing bodies in Virginia for crimes of a similar nature. The record in this case shows that Ramdass, who was born on October 19, 1971, has been involved in criminal activity since he was 14 years old.

His first violent offense was that of "purse snatch[ing]" from an elderly woman in 1985. During the time Ramdass was on probation for that offense, he began to sell illegal drugs. Soon after, he was

involved in the unauthorized use of a moped and in the statutory burglary of a dwelling with the intent to commit larceny. As a result, Ramdass was committed to state juvenile facilities in January of 1986 and was paroled in September of that year. Within three months of that release, Ramdass had violated his parole and was recommitted. He remained in custody until November of 1987, when he was released for a 30-day home visit. Ramdass was classified as an escapee when he failed to return to the state juvenile facility at the end of his home visit.

On February 20, 1988, Ramdass robbed Frederick Thompson. When the police arrested Ramdass for that offense, he was sleeping with a loaded revolver on his bedside table. Ramdass, treated as an adult for that offense, pled guilty and was sentenced to a term of seven years in the penitentiary. Ramdass was released on mandatory parole in May of 1992.

Within three months of that release, while still on parole, Ramdass again acquired a gun. Shortly thereafter, he committed six armed robberies, some accompanied by physical violence to the victims.

The first two robberies occurred on August 25, 1992, when Ramdass abducted Robina Khan, robbed Malik Hasfiz, and robbed and struck Richard Imlow in a Pizza Hut in Fairfax County. Ramdass's third robbery was that of Christopher Allen Crissel, a clerk at Bragg Towers, an apartment-hotel in Alexandria, on August 29. Crissel testified that Ramdass struck Crissel in the jaw ''as hard as he could, with a lot of impact [and] said 'Give me the f——— money or I'll blow your head off.' '' After Crissel gave Ramdass over $500 from a desk drawer, Ramdass hit the back of Crissel's head with his gun ''as hard as he could.''

██ Ramdass committed his fourth and fifth robberies on the same day. On August 30 at about 6:00 p.m., Ramdass robbed Emmanuel Gilbert Selassie and shot him in the head at close range. Later that evening, he robbed a clerk at a Domino's Pizza in Arlington. Then, on September 2, in the present case, Ramdass robbed Kayani in Ramdass's sixth robbery in eight days; he also shot Kayani in the head at close range and caused his death.

Finally, our review of the record discloses nothing to suggest that Ramdass's death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.

## CONCLUSION

We find no error in these cases. In addition, we find no basis in the record to commute the death sentence to imprisonment for life. Accordingly, we will affirm the trial court's judgment.

*Affirmed.*