Present:  Hassell, C.J., Lacy, Koontz, Kinser, Lemons, and Agee, JJ., and Compton, S.J.

COREY DION COLES
                                          OPINION BY
                               SENIOR JUSTICE A. CHRISTIAN COMPTON
 v.  Record No. 050107              November 4, 2005

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Indicted for the attempted capital murder of a law-enforcement officer, in violation of Code § 18.2-25, defendant Corey Dion Coles was convicted by the trial court sitting without a jury, and was sentenced to 50 years imprisonment with 30 years suspended.

In an unpublished per curiam opinion, the Court of Appeals of Virginia denied defendant's petition for appeal insofar as he challenged the sufficiency of the evidence to support the conviction for attempted capital murder. Coles v. Commonwealth, Record No. 2053-03-1 (April 12, 2004). We awarded the defendant an appeal from the Court of Appeals' judgment to consider the question whether the evidence was sufficient to prove premeditation and the necessary intent to kill to support that conviction.

According to settled principles of appellate review, we shall consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party in the trial court.  When a

defendant challenges on appeal the sufficiency of the evidence to sustain his conviction, the appellate court has the duty to examine the evidence that tends to support it, and to affirm the conviction unless it is plainly wrong or without evidentiary support. Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).

And, when the sufficiency of the evidence is attacked on appeal, the judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict. McCain v. Commonwealth, 261 Va. 483, 492, 545 S.E.2d 541, 547 (2001).

Employing these rules, we shall summarize the facts adduced at trial. In the City of Norfolk on October 8, 2002, near 3:00 a.m., having received report of the theft of a 1997 Honda Accord automobile, Officer H. E. Warren was patrolling in his police cruiser and observed the stolen vehicle with two occupants being operated on a city street.

After other officers were alerted to Warren's discovery, he began to follow the vehicle. As the Honda was traveling north on Wide Street approaching its intersection with East Princess Anne Road, another police cruiser, operated by Officer R. D. Lean, had stopped headed east on Princess Anne Road, partially blocking the two northbound lanes of Wide Street. From behind the Honda, Warren then "activated" the

2

lights on his vehicle, the Honda stopped, and its driver (later identified as the defendant) remained in the vehicle.

At this point in time, the Honda was in the right-hand northbound lane of Wide close to the intersection. Lean's marked police cruiser was to the right side of the right-hand eastbound lane of Princess Anne at a 45-degree angle, facing generally southeast.

Then, according to Warren's testimony, "Officer Lean got out of his car and was starting to walk around the front of [his] vehicle." At this moment, the defendant "raised his hands in a surrender position." As Lean "started moving toward" the Honda, according to Warren, the defendant "grabbed the steering wheel again, put it in gear," accelerated, and "drove his vehicle into the police unit." Upon impact, the police cruiser "was pushed towards Officer Lean, and at that point the [Honda] turned east – to go eastbound, right-hand turn, on Princess Anne Road," testified Warren.

Officer Lean, who was the subject of the indictment, testified that he joined the pursuit of the stolen vehicle and, while traveling east on Princess Anne, observed the Honda followed by Warren moving north on Wide approaching the intersection. Lean, accompanied by another officer, positioned his cruiser in the northbound lane of Wide, leaving enough space for the "small" Honda "to get by." He said: "I

3

didn't block the intersection because that's against our policies and procedures."

According to Lean, he "exited" his car, "started walking around the vehicle," and recognized the defendant as the Honda's driver. Lean testified: "He . . . come rolling up. I looked right at him. He placed his hands up. The other police cars were coming up. . . . I made a statement . . . I thought we ended the pursuit at that time."

Continuing, Lean testified that defendant "put his hands down. He hit the gas. He nudged into my police vehicle, came out, took a right . . . heading eastbound on Princess Anne Road." Lean said defendant "didn't slam into [the police vehicle]. He accelerated. [The Honda is] not a very powerful car. I have a very heavy police cruiser. It hit it, pushed it out back toward me." At the time of impact, the Honda was traveling "five to ten miles" per hour, "heading straight for the police cruiser before it swerved," according to Lean.

Lean said that, at the time the Honda began accelerating toward him, he was standing in front of the number on the driver's side of the vehicle, "basically right in front of that between the door and front tire, on the side of the vehicle." A photograph received in evidence shows the number on the left side of the police vehicle to be directly above the left front tire.

At impact, Lean said he "was at a very bad spot" performing "a felony stop," which he ordinarily executes from behind a vehicle, but this time he "happened to be in front of it."

Another police officer involved in the pursuit testified that after Lean positioned his cruiser "in front of the suspect vehicle," Lean "got out to approach the suspect vehicle" and was "ordering the driver to stop, show him his hands." According to the witness, "At that point I could see Officer Lean react toward – walked toward his car. The suspect vehicle rammed the front of his police car, then took off eastbound on Princess Anne Road." Defendant was apprehended about 15 minutes later.

Code § 18.2-31(6) provides that the "willful, deliberate, and premeditated killing of a law-enforcement officer . . . when such killing is for the purpose of interfering with the performance of his official duties" shall constitute capital murder. Code § 18.2-25 provides that any person who "attempts to commit an offense which is punishable with death" shall be guilty of a Class 2 felony.

In this appeal, defendant contends the Court of Appeals erred in determining that the trial court correctly found there was sufficient evidence of premeditation and intent to kill to support the charge of attempted capital murder of

5

Officer Lean. He contends that the "premeditation at issue is not just premeditating the act that leads to the killing (or attempted killing), but the actual result of death must be premeditated." He also argues that the evidence fails to show that defendant "reflected" with a view to determine whether he would kill or not, and that he decided to kill as a result of that reflection.

Continuing, defendant says "the evidence is more consistent with" the hypotheses either that there was "a simple attempt to escape" or "an attempt to disable the [police] cruiser."

While we agree with defendant that the actual result of death must be premeditated, we disagree with defendant's remaining contentions. Initially, we observe that the issue upon appellate review in a case like this is not whether there is some evidence to support defendant's hypotheses. Rather, the issue is whether a reasonable fact finder, upon consideration of all the evidence, could have rejected defendant's theories and found him guilty of the charged offense beyond a reasonable doubt. Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

Several additional general principles are applicable here. An attempt to commit a crime is composed of the intent to commit it and a direct but ineffectual act done towards its

6

commission.  Merritt v. Commonwealth, 164 Va. 653, 657, 180 S.E. 395, 397 (1935).  Intent is the purpose formed in a person's mind, which may be shown by circumstantial evidence including the person's conduct.  Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).

"A motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife."  Essex v. Commonwealth, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984).  Indeed, we have recognized that the premeditated use of an automobile to kill can be first-degree murder.  Harrison v. Commonwealth, 183 Va. 394, 401, 32 S.E.2d 136, 139-40 (1944).

"Premeditation is an intent to kill that needs to exist only for a moment."  Green v. Commonwealth, 266 Va. 81, 104, 580 S.E.2d 834, 847 (2003).  Accord Weeks v. Commonwealth, 248 Va. 460, 477, 450 S.E.2d 379, 390 (1994).  It usually is a factual issue.  Clozza v. Commonwealth, 228 Va. 124, 134, 321 S.E.2d 273, 279 (1984).

Finally, a person must have the specific intent to kill in order to be guilty of an attempt to commit murder. Merritt, 164 Va. at 660, 180 S.E. at 398.

When each of the foregoing factors is applied to the present case, the evidence manifestly is sufficient to prove premeditation and the specific intent to kill.

7

Important are the relative positions of the Honda, Lean's cruiser, and Lean himself when the vehicles were stopped, and before defendant accelerated the Honda. According to a diagram introduced in evidence by the defendant, the Honda was in the center of the right-hand northbound lane of Wide Street. The police car was at a 45-degree angle facing southeast on Princess Anne Road blocking the left-hand northbound lane of Wide, but not the right-hand northbound lane. Lean was standing near the left front of the cruiser, with his person exposed to the eventual path of the stolen vehicle. Contrary to defendant's argument, which ignores the evidence, Lean was not concealed and protected behind the police car.

As Lean was confronting the defendant, performing "a felony stop," defendant assumed a surrender position, and Lean believed the pursuit had ended. Then, defendant obviously decided, in that second or two, to ram the police car, intending to kill the officer in order to avoid apprehension.

The defendant contends he merely was trying to escape. This contention is belied by the clear evidence that defendant drove the Honda, not straight ahead where there was plenty of room to make a right turn, but swerved to the left and aimed the Honda directly toward the officer and the police vehicle. This maneuver enabled the small, light Honda, traveling that

short distance at five to ten miles per hour, to ram the heavy police cruiser and push it toward Lean, causing him to "jump back" to avoid injury.

Thus, the defendant, using the motor vehicle as a dangerous weapon, premeditated after initially indicating he was surrendering and formed the specific intent to kill the police officer, in order to avoid apprehension. Coupled with this intent, the defendant performed a direct but ineffectual act toward the killing of the police officer.

In sum, the Court of Appeals correctly decided the trial court reasonably could have concluded, upon consideration of all the evidence including the defendant's conduct, that he was guilty of the charged offense beyond a reasonable doubt.

Consequently, the judgment of the Court of Appeals will be

Affirmed.

JUSTICE KOONTZ, with whom JUSTICE LACY and JUSTICE AGEE join, dissenting.

I respectfully dissent. No principle is more fundamental in the criminal law than the requirement that the Commonwealth prove beyond a reasonable doubt every fact necessary to constitute the crime charged against the accused. That principle is of constitutional dimension. In re Winship, 397 U.S. 358, 364 (1970). In the present case, in order to prove

9

the charge of attempted capital murder of a law-enforcement officer the Commonwealth was required to prove beyond a reasonable doubt that Corey D. Coles acted with the specific intent to kill Officer R. D. Lean.  Merritt v. Commonwealth, 164 Va. 653, 660, 180 S.E. 395, 398 (1934).  In my view, when the evidence and all reasonable inferences fairly deducible therefrom are considered in the light most favorable to the Commonwealth, the evidence is insufficient as a matter of law to prove beyond a reasonable doubt that Coles acted with that intent.  This is so because a reasonable fact-finder upon consideration of that evidence could not have rejected Coles' defense theory that he acted only to effect an escape.  See Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

A complete recitation of the facts which led to the charge of attempted capital murder of a law-enforcement officer against Coles need not be repeated here in light of their recitation by the majority.  The critical facts are undisputed.  When Coles was stopped, he was operating a 1997 Honda automobile which he had recently stolen.  Coles became virtually surrounded by two occupied police cruisers with their lights activated.  One cruiser was positioned immediately behind the Honda and the other, operated by Officer Lean, was positioned so as to partially block the road

10

in front of the Honda. Officer Lean recognized Coles. While Officer Lean was standing near the left front of his cruiser, with the cruiser between him and the Honda, Coles "nudged" the Honda into Lean's heavier cruiser while traveling "five to ten miles" per hour.[*] The cruiser "was pushed towards Officer Lean" and he had to "jump back" in order to avoid injury. Coles then turned the Honda to the right and drove away while being pursued by the police.

In addressing these facts, the trial court rejected the defense theory that Coles "was just trying to get away," reasoning that "[t]he reasonable conclusion that can be drawn

---

[*] In previous cases where a defendant has been convicted of a specific intent crime for driving a vehicle toward another individual, there was no barrier between the defendant's vehicle and the individual. See, e.g., Holley v. Commonwealth, 44 Va. App. 228, 604 S.E.2d 127 (2004) (defendant accelerated toward police officer standing in defendant's path); Stevens v. Commonwealth, 38 Va. App. 528, 567 S.E.2d 537 (2002) (defendant turned his vehicle toward police officer, who was riding a motorcycle, and accelerated rapidly); Moody v. Commonwealth, 28 Va. App. 702, 508 S.E.2d 354 (1998) (defendant accelerated toward a pedestrian).

The fact that Lean's police cruiser separated Coles' vehicle from Officer Lean is more analogous to Haywood v. Commonwealth, 20 Va. App. 562, 458 S.E.2d 606 (1995), where the court held that insufficient proof of specific intent existed where the defendant drove toward two officers' vehicles while the officers were inside the cars. The evidence did not discount the hypothesis that "Haywood, who was in trouble with the law, merely attempted to run a roadblock to avoid apprehension." Id. at 567, 458 S.E.2d at 608; see also Moody, 28 Va. App. at 708, 508 S.E.2d at 356 (distinguishing Haywood by stating, "appellant was not attempting to run through an inanimate object; rather, the obstacle in his path consisted exclusively of a pedestrian.").

11

is that [Coles], while in custody, decided in order to effect an escape, that he was going to attempt to kill a law[-]enforcement officer engaged in his duties.  He was unsuccessful in doing so, only by luck, . . . because the police car got in his way."

"[W]here a fact is equally susceptible of two interpretations one of which is consistent with the innocence of the accused, [the trier of fact] cannot arbitrarily adopt that interpretation which incriminates him."  Corbett v. Commonwealth, 210 Va. 304, 307, 171 S.E.2d 251, 253 (1969).  It is difficult to construct a factual scenario more consistent with an attempt to escape than that established by the facts in this case.  Coles was operating a Honda that he had stolen, he was surrounded by the police, and at least one officer recognized him.  The officer that the Commonwealth asserts Coles specifically intended to kill was standing behind the police cruiser which Coles only "nudged" with the Honda.  Coles then proceeded to drive away.  That Coles merely intended to effect an escape by pushing the police cruiser out of its position in the road is just as likely as that he acted with the specific intent to kill the officer to effect an escape.  Accordingly, because the evidence is equally susceptible to the interpretation that Coles did not have the specific intent to kill Officer Lean as it is that he did, the

12

evidence is insufficient to prove beyond a reasonable doubt that Coles acted with the necessary intent to be guilty of attempted capital murder.

For these reasons, I would reverse the judgment of the Court of Appeals.