COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Petty and Alston
Argued at Chesapeake, Virginia


KEITH PERNELL CHISMAN

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1052-10-1                      JUDGE LARRY G. ELDER
                                                    MAY 31, 2011

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF YORK COUNTY
William C. Andrews, III, Judge Designate

Christopher P. Reagan for appellant.

Erin M. Kulpa, Assistant Attorney General (Kenneth T. Cuccinelli,
II, Attorney General, on brief), for appellee.


Keith Pernell Chisman (appellant) appeals from his bench trial conviction for refusing to

take a breath test in violation of Code § 18.2-268.3.[1] On appeal, appellant contends the trial

court erroneously concluded the evidence established his refusal. We hold the evidence was

sufficient to prove his refusal beyond a reasonable doubt. Thus, we affirm.

On appellate review, we consider the evidence presented at trial in the light most

favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all

inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601

S.E.2d 555, 558 (2004). When reviewing the sufficiency of the evidence to support a conviction,

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also was convicted for driving under the influence, third or subsequent
offense, in violation of Code § 18.2-266 and driving after a license revocation in violation of
Code § 46.2-391(D)(2)(a)(ii). Because his petition for appeal was denied as to his challenges to
those offenses, those convictions are not before us in this appeal.

the Court will affirm the judgment unless it is plainly wrong or without evidence to support it. E.g., Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005). "Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). Whether an alternative hypothesis of innocence is reasonable is a question of fact which is binding on appeal unless plainly wrong. Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).

Pursuant to Code § 18.2-268.2, Virginia's implied consent law, "[a]ny person . . . who operates a motor vehicle upon a highway . . . in the Commonwealth shall be deemed thereby, as a condition of such operation, to have consented to have samples" of his blood or breath taken in order to determine the alcohol or drug content of his blood, "if he is arrested for violation of § 18.2-266 or § 18.2-266.1 . . . within three hours of the alleged offense." Code § 18.2-268.2(A). The statute further provides that "[a]ny person so arrested . . . shall submit to a breath test" and that "[i]f the breath test is unavailable or the person is physically unable to submit to the breath test, a blood test shall be given." Code § 18.2-268.2(B). Finally, if a person "arrested for a violation of §§ 18.2-266 [or] 18.2-266.1 . . . unreasonably refuse[s] to have samples of his blood or breath . . . taken for chemical tests to determine the alcohol or drug content of his blood as required by § 18.2-268.2," that person violates Code § 18.2-268.3(A).

Appellant contends he cooperated with the test but that, through no fault of his own, the breath analysis machine failed to generate a valid result. Thus, he argues, the trial court improperly convicted him for unreasonably refusing to take a breath test. We disagree and hold the statute contemplates the cooperation reasonably necessary to generate a result deemed valid by the testing equipment and its licensed operator. We also hold the evidence here supports the trial court's finding that appellant's actions amounted to an unreasonable refusal in violation of

Code § 18.2-268.3. Cf. Sawyer v. Commonwealth, 43 Va. App. 42, 596 S.E.2d 81 (2004) (affirming the DUI conviction of a defendant who claimed she was physically unable to submit to a breath test due to a chronic lung condition and relying in part upon the administering police officer's testimony that the defendant, for purposes of the *preliminary* breath test, "gave . . . plenty of air and [the preliminary breath test machine] worked like it was supposed to" but that when she began the test on the "Intoxilyzer 5000," which required the same type of breath sample as the preliminary breath test machine, she appeared to cooperate by blowing into the machine as he instructed but that she "would stop" each time he said "'[y]ou're just about there, just a little bit longer'").

The evidence, viewed in the light most favorable to the Commonwealth established that appellant, who had multiple prior DUI convictions, engaged in behavior intermittently throughout the course of the encounter indicating he hoped to avoid an additional such conviction. He took longer than usual to stop his vehicle after Deputy Ben Farr activated his lights, he "begged not to go to jail," and he complained about the location of the breath test because it was on military property rather than police property.

After Deputy Farr explained to appellant in detail how the test would work—indicating appellant "would need to take a deep breath," "seal his lips on the [breath analysis machine] tube[,] and then provide one long continuous, steady breath into the machine until [Deputy Farr] told him to stop—appellant "provided two breath . . . samples that were accepted by the machine." In providing those samples, appellant did precisely as Deputy Farr had instructed: following Deputy Farr's visual example, "[appellant] took a deep breath in, provided a tight seal, and then provided one long continuous steady breath." However, after the machine performed an automatic air sample check, to be sure the ambient air did not skew the test result due to contamination with alcohol from a source other than appellant's breath sample blown directly

- 3 -

into the machine, the machine required Deputy Farr "to do [the test] again" to assure an accurate result.

When Deputy Farr told appellant he would have to take the breath test again, appellant became belligerent, this time "really complaining about the machine not being sheriff's property or police property" and saying "he ha[d] already blown six times and [he was not] going to do it anymore." Although Deputy Farr initially believed he had cajoled appellant into retaking the breath test despite his complaints, the evidence supports the trial court's finding that appellant's behavior constituted an unreasonable constructive refusal to retake the test in order to produce a valid result.

Prior to re-administering the test, Farr, who had been licensed by the Department of Forensic Science to administer breath tests on the Intoxilyzer for nine or ten years and had administered 100 to 150 such breath tests, again instructed appellant about how to perform the test. In addition to telling appellant "to take a really deep breath[,] seal his lips on the Breathalyzer tube and then provide one long, continuous steady breath down into the machine until [Deputy Farr] told him to stop," Farr also told appellant to watch the digital screen on the Intoxilyzer, which displayed one, two or three dashes depending on how hard the test subject was blowing into the machine's tube. Deputy Farr explained to appellant that he should "try to get and maintain two [digital] dashes" on the display. Appellant was looking at the digital screen, but instead of trying to maintain the two dashes, he would "just blow small puffs." He would start by taking a deep breath and blowing as instructed, but unlike during the previous two tests, which he had performed flawlessly, he would "look[] at the screen" and "*stop* blowing" "[a]s soon as two digital dashes would appear." (Emphasis added). Then "he would start again and do another . . . small puff of air," stopping "as soon as two dashes appeared" and pretending to be out of breath. Deputy Farr also noticed that appellant was "letting air escape around his

- 4 -

mouth and nose instead of providing a tight seal on the tube" as instructed, which Deputy Farr could tell because he could hear the air escaping.

Deputy Farr testified that during the course of these difficulties, he re-instructed appellant "10 to 20 times" regarding how to take the test but that "it was clear [appellant] was refusing to follow [his] instructions." After appellant repeated this pattern for several minutes, the machine produced a printout indicating it had received "a deficient sample." The only reasonable hypothesis flowing from this evidence, viewed in the light most favorable to the Commonwealth, was that appellant intentionally failed to give adequate effort to produce a test result determined by the machine to be valid and, thus, that he "unreasonably refuse[d]" to have a sample of his breath taken for the purpose of having its alcohol content analyzed.

For these reasons, we affirm appellant's conviction for refusing to take a breath test in violation of Code § 18.2-268.3.

Affirmed.