COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Alston and Senior Judge Coleman
Argued at Richmond, Virginia


DOUGLAS ALLEN DAUGHERTY

v.       Record No. 0962-11-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE SAM W. COLEMAN III
MAY 1, 2012


FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
W. Allan Sharrett, Judge

Craig S. Cooley for appellant.

Craig W. Stallard, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Douglas Allen Daugherty (appellant) appeals his convictions for two counts of first-degree

murder and two counts of use of a firearm in the commission of a felony.  On appeal, he argues the

evidence was insufficient to prove he committed the offenses.  He also contends the trial court erred

by refusing to admit evidence to impeach a key Commonwealth witness by proving the witness

possessed a stolen ATV less than thirty days prior to the date of the instant offenses.  He argues that

this evidence was particularly relevant because it corroborated his claim that the decedents were

robbing him of an ATV rather than selling him drugs at the time of the shootings.  Finally, appellant

argues the trial court erred by admitting hearsay testimony about a telephone conversation between

appellant and one of the victims and by refusing to admit evidence that the Commonwealth's key

witness lied to the police.  Finding no error in the trial court's ruling, we affirm the convictions.[1]

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The Court notes that the final sentencing order entered by the trial court erroneously
reflects that appellant was found guilty by the jury of capital murder, in violation of Code

On appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). When reviewing the sufficiency of the evidence to support a conviction, the Court will affirm the judgment unless it is plainly wrong or without evidence to support it. E.g., Coles v. Commonwealth, 270 Va. 585, 587, 621 S.E.2d 109, 110 (2005).

At about 2:45 a.m. on May 7, 2010, Alfred Piker, Rashawn Jones, and Larrell Morse were riding in a pickup truck near Hopewell. Morse testified that while riding there, Piker received a telephone call, after which Piker said appellant had called him and he, Piker, was going to appellant's residence to sell him crack cocaine.

About fifteen minutes later they arrived at appellant's house. Morse testified that when they arrived, appellant was standing near his vehicle outside the entrance to his garage. Piker exited the truck and spoke with appellant. Initially, Morse stayed in the truck and he did not hear any raised voices or arguing between appellant and Piker.

After a few minutes, Morse and Jones also exited the truck and all the men went into appellant's garage. Morse testified that inside the garage he saw Piker give appellant crack cocaine, but he did not see appellant give anything to Piker in return. At this time Jones and Morse were sitting in appellant's ATV while Piker talked with appellant, who was smoking the crack cocaine. Appellant asked Piker where his cigarettes were, and Piker told him they were in his truck. Morse testified he then saw appellant go to his own truck and return to the garage carrying a rifle. Piker said, "Go on ahead, what you doing?" Morse testified appellant

---

§ 18.2-31. Accordingly, this case is remanded to the trial court for the sole purpose of amending the final order to reflect that appellant was found guilty of first-degree murder, in violation of Code § 18.2-32.

responded, "I'm not that drunk for you to think I'm playing." Piker then said, "Well, you going to have to shoot me then." Morse testified appellant then fired two gunshots at Piker and Piker "hit the ground." Appellant then turned the gun toward Morse, but he did not fire. Jones and Morse got out of the ATV, and Jones said, "Come on, man, what you doing" and "Chill out." Morse testified that appellant then aimed the gun at Jones, at which time he, Morse, started running. Morse heard more gunshots as he ran out of the garage, but he did not see what had happened. Morse ran into the nearby woods and called 911. Morse testified he did not have a gun with him and he did not see Piker or Jones in possession of a gun or any weapon.

The medical evidence showed Piker was killed by a gunshot wound to the head. Jones was killed by gunshot wounds to the head and trunk. One gunshot entered Jones' face and another entered the back of his head. Jones was also shot twice in the back.

Appellant testified that on the night of the incident, he had purchased cocaine in Hopewell and was returning to his residence when he noticed he was being followed by another vehicle. Appellant drove to a garage located on his property, and the vehicle followed him there. After appellant parked, Piker got out of the truck and said to appellant that he owed him money. Appellant responded he did not have the money. Appellant acknowledged he smoked crack cocaine while talking with Piker. Appellant testified he went outside of the garage and while there, he heard Morse say, "Let's take this MF." Appellant testified he saw Morse pull up his shirt and display a wooden handle to "what appeared to be a revolver" tucked into the waistband of his shorts.[2] Appellant said he then went to his truck and retrieved his semi-automatic .22 caliber long rifle.

Appellant testified that when he returned to the garage with the rifle, Jones, who was still seated in the ATV accelerated the vehicle at him. Appellant raised the rifle and fired at Jones as

_____
[2] Morse had testified that he did not wear a shirt on the night of the incident.

the ATV came at him. Appellant stated Piker then ran toward him with his "hands up" and appellant shot him. Appellant continued to fire shots into the garage where Morse was located. Appellant did not claim Morse fired back, but appellant admitted he fired "in the direction Morse was running."

After Morse ran into the nearby woods, appellant moved the bodies of Piker and Jones to an area behind the garage. Appellant stayed at the scene for over an hour before he left. As he was driving back to his house, he saw the flashing blue lights of a police car, and instead of driving to his house, he acknowledged that he drove onto the main road and tried to "get away from this."

A police officer testified that appellant ignored light and siren signals from the police to pull over, he dodged a police barricade, he swerved to avoid spike strips, and his truck was bumped by a police car in an effort to stop it. Appellant drove off road into a field and did not stop until a police car pulled alongside his truck and an officer shot out his tire with a shotgun. After appellant was in custody he recounted to the police his version of what had occurred leading to the shooting during which he acknowledged that he had not seen any guns in the possession of Piker, Morse or Jones before he started shooting. He did not mention seeing the handle of what appeared to be the handle of a revolver tucked in Morse's shorts.

On cross-examination Morse admitted that he had lied under oath at the preliminary hearing when he denied there had been a drug deal between Piker and appellant. He admitted he was a convicted felon and that he had a charge of receiving stolen goods, an ATV, pending against him in Hopewell.

A jury found appellant guilty of two counts of first-degree murder and two counts of use of a firearm in the commission of a felony. Appellant now appeals.

ANALYSIS

I.

Appellant contends the evidence was insufficient to prove he committed two counts of first-degree murder and two counts of use of a firearm in the commission of a felony because Morse's testimony was incredible.

"Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner, 268 Va. at 330, 601 S.E.2d at 574, "[w]e . . . ask whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Crowder v. Commonwealth, 41 Va. App. 658, 663, 588 S.E.2d 384, 387 (2003) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Appellant argues that Morse's felony conviction, his pending criminal charges, his acknowledgement that he lied to the police as to why he went to appellant's residence on May 7, 2010, and other inconsistencies in Morse's trial testimony rendered his testimony incredible and unworthy of belief. However, "[i]n a jury trial, the credibility of the witnesses and the weight accorded to their testimony are matters solely within the province of the jury." Lynn v. Commonwealth, 27 Va. App. 336, 351, 499 S.E.2d 1, 8 (1998), aff'd, 257 Va. 239, 514 S.E.2d 147 (1999).

> When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree. So long as a witness deposes as to facts which, if true, are sufficient to maintain their verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to

> competency but to the weight and sufficiency of the testimony. If the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court.

Swanson v. Commonwealth, 8 Va. App. 376, 379, 382 S.E.2d 258, 259 (1989) (citing Simpson v. Commonwealth, 199 Va. 549, 557-58, 100 S.E.2d 701, 707 (1957)).

Testimony from a convicted felon is not inherently incredible. Yates v. Commonwealth, 4 Va. App. 140, 144, 355 S.E.2d 14, 16 (1987). Furthermore, "[p]rior inconsistent testimony is a factor in determining the credibility of a witness, but it does not automatically render the witness' testimony incredible. Inconsistent statements by a witness go to the weight and sufficiency of the testimony, not the competency of the witness." Fordham v. Commonwealth, 13 Va. App. 235, 240, 409 S.E.2d 829, 832 (1991).

Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party below, ample evidence supported a finding that appellant committed the offenses. Morse's testimony proved that appellant shot and killed two unarmed men without provocation. Morse testified he did not have a gun and he did not see any weapons in the possession of Piker or Jones. In appellant's statement to the police, appellant said he did not see any guns in the possession of the men, he just "thought" they were armed because they "usually" were.

According to Morse, appellant obtained a rifle, had a brief verbal exchange with Piker, and then shot Piker twice. Morse testified appellant then turned the gun toward Jones who pleaded with appellant to "chill out." The medical evidence showed Jones was shot twice in the back. While that evidence alone is sufficient to prove a specific intent to kill, appellant moved the two bodies to a location behind his garage and fled from the police. Concealment of the victims' bodies and the appellant's flight from the scene and efforts to avoid detection or apprehension are additional circumstances the fact finder may consider in deciding whether the

evidence proves the premeditated intent to kill.  See Epperly v. Commonwealth, 224 Va. 214, 232, 294 S.E.2d 882, 892 (1982).

The evidence proved that appellant harbored the specific intent to kill the victims. Accordingly, we conclude the evidence was sufficient for the jury to rationally find appellant guilty of the premeditated murders and the firearm offenses.

II.

Appellant next argues the trial court erred by refusing to admit impeachment evidence by showing that Morse was found in possession of a stolen ATV less than thirty days before the charged offenses.  The trial court did not allow appellant to present testimony from the owner of the stolen ATV or testimony from several law enforcement officials familiar with the ATV incident. Appellant asserts that evidence of "Morse's propensities for ATV's and his theft or receipt of a stolen ATV shortly before this incident was relevant."  Appellant claims this evidence supported the defense theory that Piker, Jones, and Morse came to appellant's residence to rob him of his ATV or to collect on a debt claimed by Piker, thereby tending to impeach Morse's testimony that appellant had called Piker to purchase drugs.  Also, appellant argues the trial court erred by refusing to admit impeachment evidence showing Morse had lied to the police about his arrest record.  Appellant avers this evidence would have shown "another instance of [Morse's] lying" and further proven his lack of credibility.

We review a trial court's decision regarding the admissibility of evidence for abuse of discretion.  Gonzales v. Commonwealth, 45 Va. App. 375, 380, 611 S.E.2d 616, 618 (2005) (en banc).  However, evidence of specific acts of misconduct committed by a witness is not admissible in Virginia to impeach the witness' credibility.  Clark v. Commonwealth, 202 Va. 787, 789-90, 120 S.E.2d 270, 272 (1961).

> The rationale behind the rule is that evidence of other specific, similar bad acts does not logically support the inference that,

> because an accused previously committed a similar act, he has a propensity to commit bad acts of this nature and, therefore, he probably committed the bad act with which he stands charged.

Wilson v. Commonwealth, 16 Va. App. 213, 220, 429 S.E.2d 229, 234, aff'd on reh'g en banc, 17 Va. App. 248, 436 S.E.2d 193 (1993).  Furthermore, "[a] witness cannot be impeached by evidence of a collateral fact which is not relevant to the issues of the trial, even though to some extent it has a bearing on the issue of credibility."  Maynard v. Commonwealth, 11 Va. App. 437, 444, 399 S.E.2d 635, 639-40 (1990) (*en banc*).  Even so, Morse admitted at trial that he had pending criminal charges related to a stolen ATV.  Therefore, evidence concerning these charges was before the jury.  Any further testimony concerning this unrelated, unadjudicated incident could have diverted the attention of the jury from the actual offenses for which appellant was on trial.  In addition, the jury heard that Morse had a prior felony conviction and that Morse admitted he initially lied to the police about why he and his cohorts went to appellant's residence.

Similarly, appellant argues the trial court erred by not allowing him to question Morse during cross-examination about all of his prior arrests which were not related to the instant case.  Appellant asserts that Morse failed to tell an officer he had been arrested for assault and two attempted robbery charges.  At trial, appellant proffered that Morse had only been arrested, not convicted, for these other offenses.  As in the stolen ATV issue, these alleged instances of unadjudicated misconduct were completely unrelated to appellant's case and involved collateral matters.

> It is well settled in Virginia that a litigant's right to impeach the credibility of adverse witnesses by showing their participation in criminal conduct has been confined to questions about a conviction for a felony, perjury, and a misdemeanor involving moral turpitude.  Code § 19.2-269 (felony and perjury; first enacted in 1919, Code § 4779 (1919)); Clark[, 202 Va. at 790, 120 S.E.2d at 272] (misdemeanor involving moral turpitude).  This limitation upon a defendant's impeachment rights is a reasonably necessary measure to restrict the scope of a criminal trial.  As we pointed out in Clark, admission of unadjudicated crimes for purposes of

general impeachment of a witness would "lead to confusion in directing the jury's attention to collateral matters and away from the issues of the case." Id. at 790, 120 S.E.2d at 273.

Ramdass v. Commonwealth, 246 Va. 413, 423, 437 S.E.2d 566, 572 (1993), vacated on other grounds, 512 U.S. 1217 (1994), cert. denied after remand, 514 U.S. 1085 (1995).

Furthermore, a defendant does not have the right to ask anything he desires in cross-examination, even if he believes the line of questioning may illustrate bias or diminish the credibility of the witness. See, e.g., Jackson v. Commonwealth, 266 Va. 423, 438, 587 S.E.2d 532, 543 (2003) (noting that a trial court can limit cross-examination of witnesses).

Therefore, the trial court did not abuse its discretion in refusing to admit detailed evidence about the stolen ATV offense or Morse's unadjudicated prior misconduct.

### III.

Appellant further contends the trial court erred by admitting improper hearsay evidence when Morse testified Piker told him appellant telephoned Piker to set up a drug transaction.

"Hearsay evidence is defined as a spoken or written out-of-court declaration or nonverbal assertion offered in court to prove the truth of the matter asserted therein." Arnold v. Commonwealth, 4 Va. App. 275, 279-80, 356 S.E.2d 847, 850 (1987). However, "[t]he hearsay rule does not operate to exclude evidence of a statement, request, or message offered for the mere purpose of explaining or throwing light on the conduct of the person to whom it was made." Fuller v. Commonwealth, 201 Va. 724, 729, 113 S.E.2d 667, 670 (1960).

At trial, the following exchange occurred:

> PROSECUTOR: After the phone call, did Mr. Piker make any statements to you about where you-all were going now?
>
> MORSE: Yes.
>
> PROSECUTOR: And what did he tell you?
>
> MORSE: He was going to get a sale.

   \*  \*  \*  \*  \*  \*  \*

  PROSECUTOR:  He was going to get?

  MORSE:  A sale.  [Appellant] called and said he had $200 and he wanted some crack.

Morse later stated Piker indicated they were going to Prince George, where appellant resided, to make the drug sale.  Thus, the evidence was offered to explain why Piker and Jones and Morse went to appellant's residence.  It was not offered to prove an element of the offenses or the fact of the matter asserted but rather to explain their presence at appellant's residence.  Accordingly, the trial court did not abuse its discretion in admitting the evidence.

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.