COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Humphreys and Senior Judge Coleman
Argued at Chesapeake, Virginia


JAMES ERVIN HOLLEY

                                                    OPINION BY
v.       Record No. 0509-03-1            JUDGE ROBERT J. HUMPHREYS
                                                    NOVEMBER 2, 2004
COMMONWEALTH OF VIRGINIA


         FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
                        Dean W. Sword, Jr., Judge

         Von L. Piersall, III (Levin, Levin & Tuthill, P.C., on brief), for
         appellant.

         Steven A. Witmer, Assistant Attorney General (Jerry W. Kilgore,
         Attorney General, on brief), for appellee.


       James E. Holley appeals his conviction, following a bench trial, for attempted malicious

wounding of a law enforcement officer (in violation of Code §§ 18.2-26 and 18.2-51.1).[1]

Specifically, Holley advances the following Question Presented:  "Was the Commonwealth's

evidence sufficient to prove beyond a reasonable doubt that Mr. Holley acted with the intent to

maim, disfigure, disable or kill as required by Virginia Code Section 18.2-51[.1] and as alleged

_____

       [1]  Holley was also convicted of grand larceny (in violation of Code § 18.2-95), grand
larceny of an automobile (in violation of Code § 18.2-95), eluding police (in violation of Code
§ 46.2-817), driving in a manner so as to endanger the life, limb, or property of another after
having been declared an habitual offender (in violation of Code § 46.2-357), and destruction of
property (in violation of Code § 18.2-137).  Those convictions are not at issue in this appeal.

in Count One."[2]  For the reasons that follow, we affirm Holley's conviction, but remand solely

for the purpose of correcting a clerical error in Holley's sentencing order.[3]

## I.  Background

When sufficiency of the evidence is challenged on appeal, we "review the evidence in the

light most favorable to the Commonwealth, granting to it all reasonable inferences fairly

deducible therefrom." Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997)

(citation omitted).  So viewed, the evidence establishes that on September 3, 2002, Holley

approached an employee, Cindy Anderson, at a Portsmouth Food Lion and "said that he needed

some boxes."  After failing to find "a few boxes" "by the dairy department," Anderson called her

assistant manager to ask if they could "get [Holley] a box or two."  Anderson's assistant manager

responded, "Yes, send him over here by the grocery room."  Holley then walked away.

A few moments later, Anderson saw Holley leaving the store.  Holley was carrying a box.

Anderson observed "cartons of Marlboros sticking out of the top of the box."  After asking a

cashier if Holley had paid for the cigarettes, Anderson "went out the door," observed Holley

"jump[] into a van," and heard him say "Go, go, go."  Anderson told her coworkers to call the

police.

---

[2]  Count one of Holley's grand jury indictment read as follows:

> 1.  Attempted Malicious Wounding of a Law Enforcement Officer
>
> On or about, Tuesday, September 2, 2002, did attempt to
> maliciously cause bodily injury to Officer J. Quiros, a law
> enforcement officer engaged in the performance of his/her duties
> as such by striking with a motor vehicle with the intent to maim,
> disfigure, disable or kill in violation of Code §§ 18.2-51.1;
> 18.2-26; 18.2-10 of the Code of Virginia (1950) as amended.

[3]  The sentencing order incorrectly recited that Holley was "found guilty of"
"Attempt[ed] Malicious Wounding" in violation of "Code § 18.2-51" rather than Code
§ 18.2-51.1.  Accordingly, we remand solely for the purpose of correcting the clerical error.

Officer Jorge Quiros, of the Portsmouth Police Department, happened to be "doing a direct patrol" at the shopping center at that time. Officer Quiros was driving a "marked police K-9 Unit" and was in "full uniform." As he was "driving around," he noticed a blue van parked "near the front of the shopping center close to the Food Lion." He observed a woman wearing a "Food Lion type uniform" waving at him and pointing at Holley. Quiros saw that Holley was walking toward the blue van at a "quick pace."

As Quiros drove his patrol unit toward the van, he could hear Holley "yelling." Quiros rolled down his window, and the Food Lion employee (Anderson) advised Quiros that "[Holley] had just stolen some merchandise from the store." "As this conversation was taking place," Quiros observed Holley approach the van, "yelling and screaming." Officer Quiros then saw people emerging from the van, and "it appeared . . . that [Holley] extracted a young lady out of the vehicle." Anderson yelled, "Look out!" Quiros then realized that Holley had started the van motor and begun to accelerate. The woman Holley had "extracted" from the van yelled, "He's stealing my van." Quiros had to move his "K-9 truck out of the way before" the van struck him. The van "took off at a high rate of speed," and Quiros pursued after activating his "lights and sirens."

Holley drove the van "around [the] little shopping area twice at a high rate of speed," despite the fact that "[i]t was a very busy night for that shopping center" and "there were people scattering." Without slowing, Holley exited onto Portsmouth Boulevard, causing "traffic to lock up with brakes and skid." Holley then accelerated and "forced traffic to open up for him," apparently ignoring the red light at the intersection. Holley continued driving, "jump[ing] the median" several times and driving in the wrong direction on busy roads. At one point, Holley turned and drove back in the direction he had come from. Because of his earlier erratic driving, traffic was "congested," and several cars "were actually in a 'V' where they had [earlier] been

forced off onto the sidewalk and to the median." "It was so tight" there that Holley had to bring the van to a complete stop. At that time, Officer Quiros "came around facing him head-on approximately 15 to 20 feet away." As Officer Quiros stepped out of his patrol unit and drew his weapon, Holley "looked in [his] direction, accelerated the van, and came right at [him]," passing between two cars. Quiros had to "dive back into his K-9 truck," slamming the door shut behind him, to "avoid being struck." The van "passed within inches of [Quiros's] truck."

Due to the "traffic and everybody else around [him]," Quiros realized "there was no way [he] could continue that pursuit on [Holley]." Accordingly, Quiros called to request a marked unit to take over the pursuit.

Holley was ultimately apprehended after Officer Roberta Monell, also of the Portsmouth Police Department, joined in the pursuit. Monell was able to stop Holley when she "moved [her] police car forward and pushed the rear of his van against [a] guardrail so he could not proceed anymore" – all of this occurring after Holley had already backed into Monell's police car in an effort to "get away from [Monell]."

Holley was charged with one count of eluding police, one count of driving in a manner so as to endanger the life, limb, or property of another after having been declared an habitual offender, one count of destruction of property, one count of grand larceny of an automobile, one count of grand larceny, and two counts of attempted malicious wounding of a police officer.

During his trial, Holley made a motion to strike with respect to both charges of malicious wounding of a law enforcement officer. Holley's counsel argued that the Commonwealth failed to produce evidence that Holley possessed the requisite intent to maliciously wound the officers and that, instead, the evidence merely proved that his intent was to "get away from the police." The trial court denied the motion and ultimately found Holley guilty of all the charges, with the

- 4 -

exception of the charge of attempted malicious wounding of Officer Monell. In dismissing that count, the trial court held that "the evidence [was] insufficient as it relate[d] to Officer Monell."

## II. Analysis

On appeal, Holley contends that the trial court erred in finding the evidence sufficient "to prove beyond a reasonable doubt that [Holley] acted with the intent to maim, disfigure, disable or kill" Officer Quiros, "as required by Virginia Code Section 18.2-51[.1] and as alleged in Count One" of the indictment. Holley asks us to reverse and dismiss his conviction for attempted malicious wounding.

Code § 18.2-51.1 states, in relevant part:

> If any person maliciously causes bodily injury to another by any means including the means set out in § 18.2-52, with intent to maim, disfigure, disable or kill, and knowing or having reason to know that such other person is a law-enforcement officer . . . , such person shall be guilty of a felony punishable by imprisonment for a period of not less than five years nor more than 30 years and, subject to subsection (g) of § 18.2-10, a fine of not more than $100,000. Upon conviction, the sentence of such person shall include a mandatory minimum term of imprisonment of two years.

Accordingly, to convict the defendant of attempted malicious wounding of a law enforcement officer, the Commonwealth must prove beyond a reasonable doubt that the defendant attempted the criminal act and that he acted "with intent to maim, disfigure, disable, or kill" the law enforcement officer. Id.

> "'An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission.'" [Merritt v. Commonwealth, 164 Va. 653, 657, 180 S.E. 395, 397 (1935)] (citation omitted). "Intent is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be proved by a person's conduct or by his statements." Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969); see Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). "[A] person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act." Nobles,

- 5 -

218 Va. at 551, 238 S.E.2d at 810. "[W]hether the required intent exists is generally a question for the trier of fact." Id.

Haywood v. Commonwealth, 20 Va. App. 562, 565-66, 458 S.E.2d 606, 607-08 (1995).

It is well settled that "[t]he intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged." Wynn v. Commonwealth, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987). In this vein, Holley contends the Commonwealth's evidence presents two reasonable hypotheses, one consistent with his innocence and the other with his guilt, and that the evidence fails to exclude the hypothesis of innocence. Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998) (citing Haywood, 20 Va. App. at 567, 458 S.E.2d at 608). Specifically, Holley contends that the Commonwealth's evidence failed to exclude the reasonable hypothesis that he accelerated toward Officer Quiros, not with the specific intention to "maim, disfigure, disable, or kill" him, but with the intention of merely escaping.

In support of his argument, Holley relies upon this Court's decision in Haywood, 20 Va. App. at 562, 458 S.E.2d at 606. In that case:

> Haywood, who had been drinking heavily, fled the scene of a public altercation in his truck. On two separate occasions, a police officer positioned his vehicle in the road so as to block Haywood's path. On each of these occasions, however, Haywood failed to slow down or change his course and, but for the officers' last-minute evasive actions, would have struck the police vehicles. [Haywood, 20 Va. App. at 564-65, 458 S.E.2d at 607.]
>
> On Haywood's appeal from two convictions of attempted capital murder of a police officer, we addressed the question of "whether Haywood, while driving his truck, formed the specific intent to use his vehicle as a weapon for the unequivocal purpose of murdering the police officers." Id. at 566, 458 S.E.2d at 608. We reversed the convictions because the Commonwealth presented no direct evidence that Haywood, by running the road blocks, intended to kill the police officers and because the circumstantial evidence did not exclude the reasonable hypothesis of innocence that Haywood

- 6 -

> only intended to avoid police apprehension by driving through
> their vehicular roadblocks. Id. at 567-68, 458 S.E.2d at 609.

Moody, 28 Va. App. at 707-08, 508 S.E.2d at 357 (explaining Haywood, 20 Va. App. at 564-68, 458 S.E.2d at 607-09).

While we recognize Holley clearly sought to escape apprehension, the evidence in this case *further* proves his intent to injure Officer Quiros in the process of doing so. In the course of his attempted escape, Holley was forced to bring the van to a complete stop. After stopping the van, Holley saw Officer Quiros standing in his path. Holley then accelerated the van directly towards Officer Quiros, without making any effort to veer or avoid striking Officer Quiros. The fact finder could conclude that Officer Quiros avoided being struck only by taking the evasive action of diving into his patrol unit. Thus, the fact finder could further conclude that, in his effort to escape, Holley attempted to drive through Officer Quiros. Here, we do not have a situation where Holley swerved, from which two inferences can be drawn, one consistent with innocence and the other consistent with guilt. The fact that Holley may have been attempting to escape, on these facts, is not inconsistent with the equally reasonable hypothesis that he was attempting to do so by running over Officer Quiros. Code § 18.2-51.1; see also Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003) (noting that the "issue upon appellate review is not whether 'there is some evidence to support'" the defendant's hypothesis of innocence, but "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the defendant's] theories in his defense and found him guilty" beyond a reasonable doubt).

Holley's actions are therefore factually distinguishable in several respects from those presented in Haywood. Specifically, in Haywood, the defendant never halted his truck, but instead continued driving at a high rate of speed despite the presence of the police cars that had been placed in his path. The evidence did not show that Haywood knew that an officer was in

- 7 -

the car and that Haywood specifically intended to maim, disable, disfigure or kill an officer. See Haywood, 20 Va. App. at 564-65, 458 S.E.2d at 607. The circumstances of the present case, however, more closely resemble the facts in Stevens v. Commonwealth, 38 Va. App. 528, 567 S.E.2d 537 (2002). In Stevens, this Court affirmed a conviction for the attempted capital murder of a law enforcement officer where the defendant "came to a stop" approximately ten feet away from a stopped police car, "and, looking right at [the police officer], rapidly accelerated directly toward him." Id. at 537, 567 S.E.2d at 541. Because Stevens "deliberately turned his car in [the officer's] direction and drove toward him," we concluded that the evidence was sufficient to prove that Stevens "had the requisite specific intent to use his vehicle as a weapon for the unequivocal purpose of murdering Officer Hines." Id. Although Holley was charged with attempted malicious wounding rather than attempted capital murder, the reasoning in Stevens is equally applicable here.

Moreover, unlike the defendant in Haywood, Holley "was not attempting to run through an inanimate object; rather, the obstacle in his path consisted" of Officer Quiros visibly standing behind his open patrol unit door. Moody, 28 Va. App. at 708, 508 S.E.2d at 357. In fact, Officer Quiros had parked his patrol unit only 15 to 20 feet away from Holley and had "stepped out of his patrol unit and [drawn] his weapon." After Holley "looked in [Officer Quiros's] direction, [he] accelerated the van, and came right at [him]." In order to avoid injury, Quiros had to "dive" into his patrol unit, slamming the door shut behind him. In Haywood, by contrast, the evidence established only that the defendant drove toward parked police cars that had been set up as roadblocks. In contrast, the trial court here could have reasonably concluded that, when Holley aimed the van directly at Officer Quiros – rather than the parked police car – Holley had formulated the specific intent to "maim, disfigure, disable, or kill" the officer. Code § 18.2-51.1; see Moody, 28 Va. App. at 707, 508 S.E.2d at 356 (affirming conviction for attempted malicious

wounding where the defendant, "who saw [a pedestrian] blocking the only avenue of his escape, deliberately chose to accelerate his car toward the pedestrian, never decelerating, braking, or swerving to avoid him," and the pedestrian "was spared certain injury only by jumping out of the vehicle's path at the last moment").[4]

Upon consideration of the evidence, the trial court could have reasonably found that Holley accelerated toward Officer Quiros in order to escape apprehension by running down the officer. This is not a situation where to accept the theory that Holley was attempting to escape would necessarily exclude the hypothesis that he was also attempting to maim or injure Officer Quiros. The evidence raises the sole inference that Holley intended to escape even if in so doing he had to drive his accelerating vehicle into the officer who stood before him. Accordingly, we affirm the conviction for violating Code § 18.2-51.1. We, nevertheless, remand this matter for the purpose of correcting the clerical error reflected in Holley's sentencing order.

<u>Affirmed and remanded.</u>

---

[4] Cf. <u>Luck v. Commonwealth</u>, 32 Va. App. 827, 832-34, 531 S.E.2d 41, 43 (2000) (finding that a "fact finder could draw the reasonable and justified inference that the defendant intended to maim, disfigure, disable or kill when he repeatedly rammed the police vehicle while traveling at 80 miles per hour," and noting that "such a finding is consistent with the defendant's claim that he was merely trying to elude the police" because "his assertion provide[d] the motive and explanation for his intentional acts, which could obviously cause a serious wreck, maiming, disfiguring, disabling, or killing anyone involved"); <u>see also</u> <u>Stevens</u>, 38 Va. App. at 537, 567 S.E.2d at 541 (concluding that "the trial court could reasonably infer that [the defendant] intended 'to run [the police officer] down' with his vehicle and that . . . [the defendant's] act, if not thwarted, would have resulted in the immediate, direct, and necessary consequence of [the officer's] death").