COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judge McClanahan and Senior Judge Willis
Argued at Richmond, Virginia


DONNY LYNN SPROUSE, SR.

MEMORANDUM OPINION* BY
v.       Record No. 3010-04-2       CHIEF JUDGE JOHANNA L. FITZPATRICK
FEBRUARY 7, 2006

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
Von L. Piersall, Jr., Judge Designate

Andrea Lantz Harris, Assistant Public Defender (Office of the
Public Defender, on brief), for appellant.

Michael T. Judge, Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Donny Lynn Sprouse (appellant) was convicted in a bench trial of attempted malicious

wounding in violation of Code §§ 18.2-51, 18.2-26 and 18.2-10.  On appeal, he contends the

evidence was insufficient to convict him.  We affirm the trial court.

I.  BACKGROUND

Under familiar principles of appellate review, we examine the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible

therefrom.  See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997).

So viewed, the evidence established that Kevin Michael Moore (Moore), appellant's

nephew, and appellant had a confrontation prior to November 13, 2003.  Appellant embraced

Moore's mother and Moore told him to take his hands off her.  Moore stated appellant

> was getting violent, telling me what he was going to do and how he
> was going to whip my butt, how he could knock me out with two

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

punches or he could kill me in two minutes, just talking how he could hurt me and cause harm to me and how he could pretty much destroy me in a matter of minutes, so I felt, you know, fear.

On that occasion, Moore had a gun, showed it to appellant but did not point it at him, and the confrontation ended.

At approximately 5:30 p.m. on November 13, 2003, Moore arrived home after passing appellant leaving a neighbor's driveway. Moore parked his car in the driveway behind one of two other parked cars. Appellant stopped on the state road at the end of Moore's driveway and as Moore walked toward his house, yelled "[Y]our day is numbered [sic]," "[Y]ou're going to get it," and "[D]o you have your gun now?" at Moore. Appellant drove off, and Moore went inside his house. A short time later, Moore walked up his driveway to check his mail and get the newspaper. On his way back to the house and halfway down the driveway, Moore saw appellant's truck come "flying" into his driveway at a high rate of speed. Moore ran the remaining 50 feet and jumped between the two parked cars to avoid being struck by appellant's truck. Moore stated that appellant was driving directly towards him and that his truck came within four or five feet of hitting him. Appellant skidded to a stop near Moore and yelled again "[W]here's everybody at now? [sic]" "[W]hat are you going to do now?" "[W]here's your gun now?" and "[Y]our days are numbered." As Moore used his cell phone to call his father, appellant "took off spinning, throwing gravel and left – just kicked up, spinning in the gravel and leaving in a hurry, then when he got out on the street, he left a black mark on the street."

Richard Glenn Spradlin, Moore's father, testified that he spoke with appellant after the incident. At that time, appellant said he was going to kill them both. The police took a picture of the driveway and confirmed fresh skid marks in the gravel. Officer Seitz also spoke to appellant shortly thereafter and described his physical appearance as "smell[ing] of alcohol, a little bit of a slurred speech, [and] slow dexterity-wise."

- 2 -

Appellant denied ever being in Moore's driveway. He admitted asking him where his gun was, but denied threatening to kill him or his father. Appellant claimed Moore pointed the gun at him in the incident involving Moore's mother. He admitted he drank "a couple of beers or so" on November 13.

Appellant was convicted of attempted malicious wounding and sentenced to five years in prison with two years suspended. Appellant appeals from that conviction.

## II. ANALYSIS

Appellant's sole contention on appeal is that the evidence was insufficient to convict him. He argues that the Commonwealth failed to prove he had the intent to maim, disfigure, disable, or kill Moore. We disagree.

"When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the prevailing party, the Commonwealth, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense." Slade v. Commonwealth, 43 Va. App. 61, 69, 596 S.E.2d 90, 94 (2004) (citing Haskins v. Commonwealth, 31 Va. App. 145, 149-50, 521 S.E.2d 777, 779 (1999)). In so doing, we must """discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom."" Stevens v. Commonwealth, 44 Va. App. 122, 127-28, 603 S.E.2d 642, 645 (2004) (quoting Kelly v. Commonwealth, 41 Va. App. 250, 254, 584 S.E.2d 444, 446 (2003) (en banc) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998))).

> In considering an appellant's alternate hypothesis of innocence in a circumstantial evidence case, we must determine "not whether there is some evidence to support" the appellant's hypothesis of innocence, but, rather, "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the

appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt."

Emerson v. Commonwealth, 43 Va. App. 263, 277-78, 597 S.E.2d 242, 249 (2004) (quoting Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003)). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Hudson, 265 Va. at 513, 578 S.E.2d at 785 (citation omitted).

Code § 18.2-51 provides, "[i]f any person maliciously . . . by any means cause him bodily injury, with the intent to maim, disfigure, disable, or kill he shall . . . be guilty of a Class 3 felony."

"An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission." Holley v. Commonwealth, 44 Va. App. 228, 234, 604 S.E.2d 127, 130 (2004). See also Merritt v. Commonwealth, 164 Va. 653, 657, 180 S.E. 395, 397 (1935); Crawley v. Commonwealth, 25 Va. App. 768, 772, 492 S.E.2d 503, 505 (1997); Haywood v. Commonwealth, 20 Va. App. 562, 565, 458 S.E.2d 606, 607-08 (1995). "Intent is the purpose formed in a person's mind and may be, and frequently is, shown by the circumstances. It is a state of mind which may be proved by a person's conduct or by his statements." Holley, 44 Va. App. at 234, 604 S.E.2d at 130. See also Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977); Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969); Crawley 25 Va. App. at 772, 496 S.E.2d at 505; Haywood, 20 Va. App. at 565-66, 458 S.E.2d at 607-08.

> Whether the required intent exists is generally a question for the trier of fact. The inferences to be drawn from proved facts are within the province of the trier of fact, so long as the inferences are reasonable and justified. Where . . . the Commonwealth relies solely on circumstantial evidence to prove the intent of the

- 4 -

[appellant], the evidence must exclude every reasonable hypothesis of innocence.

Crawley, 25 Va. App. at 773, 492 S.E.2d at 505.

"[T]he appellate courts of this Commonwealth have long recognized that circumstantial evidence is not to be viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Kelly, 41 Va. App. at 259, 584 S.E.2d at 448 (internal quotations and citations omitted).

In the instant case, the evidence established that appellant drove his truck down a 100-foot driveway at a high rate of speed. Moore testified he believed that appellant was going to hit him, and he had to jump between two parked cars to escape being struck. Appellant admitted threatening Moore, drinking alcohol before the incident, and confirmed that he and Moore had prior confrontations. Moore's father also heard appellant's threats and saw skid marks in the gravel driveway. The police officer investigating the incident also observed fresh skid marks and testified the appellant appeared to have been drinking.

It is well settled in Virginia that, "[a] motor vehicle, wrongfully used, can be a weapon as deadly as a gun or a knife." Essex v. Commonwealth, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984). See also Holley, 44 Va. App. 228, 604 S.E.2d 127 (evidence sufficient to prove defendant's intent to maim, disfigure, disable, or kill where defendant drove directly at police officer forcing him to dive back into his vehicle to avoid being struck); Stevens v. Commonwealth, 38 Va. App. 528, 567 S.E.2d 537 (2002) (evidence sufficient to prove defendant's intent where defendant accelerated toward a police officer and only veered away when fired upon); Moody v. Commonwealth, 28 Va. App. 702, 508 S.E.2d 354 (1998) (evidence sufficient to prove defendant's intent where defendant accelerated toward teacher forcing teacher to jump out of the way). The trial judge, in finding appellant guilty, noted:

Apparently, the parties had a history and a pretty violent one, where a gun was displayed, if not more than that, and that on this particular date, [appellant] even admits that [he] stopped and said, where is your gun now, which is sort of a provocative sort of comment to make to a – for a forty-four (44) year old man to be making to an eighteen (18) year old boy who is his nephew there in the street, but it's apparently – at least, from the testimony of the victim and his father, there was a lot more to it than that. I don't think there's any question, at least not in my mind, that [appellant] drove up in the driveway and that the boy, the young man, had to run away to keep from being hit by the car or the truck, and the question is, whether or not that is sufficient to justify a charge of attempted malicious wounding. Certainly, there's evidence by way of the comments, to indicate there was malice in the relationship and that is further demonstrated by driving up in the driveway when he knew the boy was alone there in the house, causing a lot of skidding and so on. The question is whether or not he was trying to run over the boy or scare him. Based on the testimony of the accusation, [sic] I'm going to kill you and where is your gun now, and so on, I would think that there is – there was evidence on his part – this is evidence on his part that he intended to run over the boy if he didn't get out of the way, and so, I'm going to find him guilty of attempted malicious wounding.

The trial court's determination that appellant attempted to run over Moore and cause him serious bodily injury was not plainly wrong or without evidence to support it.

Accordingly, we affirm.

<u>Affirmed.</u>