COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, McClanahan and Senior Judge Willis
Argued at Chesapeake, Virginia


CALVIN DEAN COLEMAN, II
                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 1618-05-1                      JUDGE D. ARTHUR KELSEY
                                                      NOVEMBER 7, 2006
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                          H. Vincent Conway, Jr., Judge

             Robert F. Hagans, Jr., for appellant.

             Karri B. Atwood,  Assistant Attorney General (Robert F.
             McDonnell, Attorney General, on brief), for appellee.


        On appeal, Calvin Dean Coleman, II contests the sufficiency of the evidence supporting

his conviction on eight counts of attempted malicious wounding and eight additional counts of

felonious use of a firearm.  Finding the evidence sufficient, we affirm.

                                            I.

        Under settled principles, we review the evidence in the "light most favorable" to the

Commonwealth.  Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003).

That principle requires us to "discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and

all fair inferences to be drawn therefrom."  Parks v. Commonwealth, 221 Va. 492, 498, 270

S.E.2d 755, 759 (1980) (emphasis and citation omitted).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Working as security at a nightclub, several police officers in full uniform parked two marked police vehicles in the parking lot just outside the nightclub's entrance. Shortly after midnight, a fight broke out in the nightclub and several groups of patrons were ejected by the bouncer. One of the officers, Lt. Riley, observed three distinct groups together totaling about 18 or 19 patrons. The first group, which included Coleman, immediately dispersed and walked out of Riley's eyesight. A fight began between some of the second and third groups. Police officers rushed in to break up the fight. The two groups scattered when they saw the officers running to the scene. By the time the officers arrived, Riley testified, "They were gone." Riley and a fellow officer, Detective Best, managed to seize two of the combatants as they tried to run off.

At that point, the officers (eight in all) and the two apprehended patrons were the only people in the immediate vicinity. Riley testified he then heard multiple rounds of gunfire "directly behind" him, close enough to "smell the gunpowder" from the discharging firearm. Riley said he "had a lot of officers" to the right of him, "directly to the right," yelling, "He's got a gun. Take cover." The bullets whistled past the officers and blew chunks of stucco from the nearby wall of the nightclub. One of the bullets struck a patron as he walking out of the nightclub. In all, Riley heard a fusillade of about "six or seven shots."

Though Lt. Riley never saw the shooter, Detective Best did. She saw Coleman firing a handgun while "moving rapidly" from the parking lot to the nightclub. Coleman was "moving towards our direction," Best recalled, "in a crouched position" with his "arm extended." Coleman fired, Best estimated, as few as five and as many as eight shots in the direction of the officers. Coleman fired continuously as he moved rapidly from about 40 yards away to within about 25 yards. Like Riley, Best heard the bullets streak past her, over her right shoulder, blowing holes in the stucco walls of the nightclub. During the shooting, Best testified, all of the officers were within her "immediate area."

Another police officer, Officer Barnes, saw Coleman fire about five times. Barnes recalled Coleman firing from a distance of about 30 yards away. Barnes estimated Detective Best would have seen Coleman firing his weapon at about 20 to 25 yards away. Barnes testified that there were approximately seven more officers between he and Best — all within an area of about 5 to 10 yards.

After Coleman fired his last shot, he jumped into the passenger side of a vehicle which immediately sped away. Several officers chased Coleman's vehicle until it stopped. The driver of Coleman's vehicle ran one way and Coleman the other. Lt. Riley caught up with Coleman and placed him under arrest. At his capture, Coleman protested: "You don't have a case because you don't have the gun."

Coleman testified at trial. As his direct examination began, Coleman said he too "heard gunshots going off" while walking away from the nightclub. Coleman claimed he then ran to his brother's vehicle and climbed in. The police stopped his vehicle a couple minutes later, Coleman stated. Upon further questioning by his counsel, however, Coleman reluctantly admitted he retrieved a firearm from the vehicle and walked toward the nightclub. He "shot into the air," Coleman claimed, but never "into the crowd." As Coleman put it: "So I shoot into the air, everyone drops, and I take off running. That's the story that I'm giving."

The trial court, sitting as factfinder, found that Coleman's testimony "borders on fantasy" and rejected his hypothesis that he was using the firearm merely as an instrument of fright. After rejecting Coleman's motions to strike, the trial court initially found him guilty of eight counts of attempted capital murder of police officers in violation of Code §§ 18.2-25 and 18.2-31(6), coupled with eight corresponding convictions for felonious use of a firearm. Upon reconsideration, the trial court reduced the convictions to eight counts of attempted malicious wounding and parallel counts of felonious use of a firearm. When asked to reconsider this

- 3 -

finding, the trial court explained that it found Coleman innocent of "attempted murder of eight police officers because he had no specific intent to kill the officers; however, to make that finding is not the same thing as to make a finding that he had no specific intent to harm or to shoot at the direction of these people."[1]

## II.

### A. STANDARD OF APPELLATE REVIEW

"We review lower court factfinding with the highest degree of appellate deference." Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006). When addressing the sufficiency of the evidence, we "'presume the judgment of the trial court to be correct' and reverse only if the trial court's decision is 'plainly wrong or without evidence to support it.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (citations omitted). "This standard comes from Code § 8.01-680 — the basis for our appellate review of factfinding in civil and criminal cases as well as bench and jury trials." Seaton v. Commonwealth, 42 Va. App. 739, 747 n.2, 595 S.E.2d 9, 13 n.2 (2004).

In practical terms, this means a reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Haskins v. Commonwealth, 44 Va. App. 1, 7-8, 602 S.E.2d 402, 405 (2004) (emphasis in original and citation omitted). We ask only whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the

---

[1] The trial court also found Coleman guilty of malicious wounding of the patron shot while exiting the nightclub and an associated charge of felonious use of a firearm. By earlier order, we denied the portion of Coleman's petition for appeal challenging these convictions.

evidence, and to draw reasonable inferences from basic facts to ultimate facts." Barnes v.

Commonwealth, 47 Va. App. 105, 110 n.1, 622 S.E.2d 278, 280 n.1 (2005) (citation omitted).

"It also ensures that we remain faithful to 'our duty not to substitute our judgment for that of the

trier of fact, even were our opinion to differ.'" Id.[2]

## B. COLEMAN'S SUFFICIENCY CHALLENGE ON APPEAL

In this case, Coleman claims on appeal the evidence cannot rationally support a finding

that he attempted to maliciously wound the eight police officers. Coleman's hypothesis of

innocence, rejected by the factfinder,[3] was that he merely fired the handgun to "scatter, scare,

intimidate" but not "wound" anyone. Appellant's Br. at 6. In no event, Coleman adds, did he

intend to wound the police officers. Admitting he may have displayed a "general malevolence"

toward the officers, id., Coleman asserts the evidence is insufficient to support an inference of

any specific intent to wound them. In sum, Coleman argues: "It is not sufficient to conclude that

because defendant fired in the vicinity of a group of people that he must have intended to

---

[2] See also Boyd v. County of Henrico, 42 Va. App. 495, 525, 592 S.E.2d 768, 783 (2004) (*en banc*) ("The trial judge's factual findings cannot be disturbed on appeal unless no 'rational trier of fact' could have come to the conclusions he did."); Crowder v. Commonwealth, 41 Va. App. 658, 662-63, 588 S.E.2d 384, 386-87 (2003); Hoambrecker v. City of Lynchburg, 13 Va. App. 511, 514, 412 S.E.2d 729, 731 (1992).

[3] As the Virginia Supreme Court has recently reaffirmed:

> Initially, we observe that the issue upon appellate review in a case like this
> is not whether there is some evidence to support defendant's hypotheses.
> Rather, the issue is whether a reasonable fact finder, upon consideration of
> all the evidence, could have rejected defendant's theories and found him
> guilty of the charged offense beyond a reasonable doubt.

Coles v. Commonwealth, 270 Va. 585, 589, 621 S.E.2d 109, 111 (2005) (citing Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003)); see also Haskins, 44 Va. App. at 9, 602 S.E.2d at 406 (determining the reasonableness of a hypothesis of innocence is itself a question of fact subject to deferential appellate review).

maliciously wound somebody or more specifically, the police because they were present, in uniform, and provided more serious charges for the Commonwealth to prosecute." Id. at 7.

### C.  MALICIOUS WOUNDING & CRIMINAL ATTEMPT

Malicious wounding includes shooting a victim with an intent to "main, disfigure, disable, or kill" him.  Code § 18.2-51.  As the trial court noted when clarifying its final ruling, the malicious wounding statute requires only an intent "to maim, disfigure, disable, *or* kill." Coleman v. Commonwealth, 261 Va. 196, 200, 539 S.E.2d 732, 734 (2001) (quoting Code § 18.2-51 (emphasis added)).  Because of "the use of the disjunctive 'or' in the statute," a conviction for malicious wounding "does not require proof of the specific intent to kill." Id.

A criminal attempt requires an intent to commit a crime coupled with a direct, though ineffectual, act towards its commission.  Coles v. Commonwealth, 270 Va. 585, 589, 621 S.E.2d 109, 111 (2005).  An elusive concept, intent is "formed in a person's mind and may be, and frequently is, shown by circumstances."  Holley v. Commonwealth, 44 Va. App. 228, 234, 604 S.E.2d 127, 130 (2004) (affirming attempted malicious wounding conviction).  "Such intent may be inferred from the actor's conduct and the attendant circumstances."  4 Charles E. Torcia, Wharton's Criminal Law § 695, at 589-91 (15th ed. 1996).[4]  To be sure, "in criminal attempt cases, 'the fact finder is often allowed broad latitude in determining the specific intent of the actor.'"  Siquina v. Commonwealth, 28 Va. App. 694, 700, 508 S.E.2d 350, 353 (1998) (citation omitted); Wilson v. Greene, 155 F.3d 396, 406 (4th Cir.1998).

---

[4] See, e.g., Holley, 44 Va. App. at 234, 604 S.E.2d at 130 (affirming a conviction for attempted malicious wounding and stating that a defendant's intent can be inferred from the "immediate, direct, and necessary consequences of his voluntary act" (citation omitted)); see also Howard v. Commonwealth, 207 Va. 222, 228, 148 S.E.2d 800, 804 (1966) (applying inference to a charge of attempted murder); Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998) (recognizing inference applicable to a charge of attempted malicious wounding).

D.   SUFFICIENCY OF EVIDENCE SUPPORTING COLEMAN'S CONVICTIONS

Governed by these principles, the trial court did not act outside its factfinding discretion in convicting Coleman of eight counts of attempted malicious wounding. While rapidly advancing, crouched down and arm extended, Coleman fired a fusillade of gunfire in the direction of eight police officers. Officer Barnes's testimony places the eight officers in a 5 to 10-yard area directly in front of the nightclub. The officers were in uniform. Their two marked police cars were parked nearby. Lt. Riley testified that the three groups of patrons (save the specific individuals detained by the officers) had all dispersed before Coleman began firing. At that time, eight of the ten individuals in front of the nightclub were uniformed police officers.

The most obvious consequence of shooting at someone is that you will likely seriously injure him if your bullet finds its target. That Coleman's marksmanship was poor, making his act of shooting wholly ineffectual, does not mean the factfinder had no choice but to conclude he did not intend to wound the officers.[5] It only means the *actus reus* of Coleman's crime could rise no higher than an attempt to commit it.[6] The trial court, therefore, was within its "broad

---

[5] See People v. Manzo, 539 N.E.2d 237, 242 (Ill. App. Ct. 1989) (holding jury's finding that defendant intended to kill victim was reasonable where, standing a few feet away, he pulled out a gun, aimed it at victim's head, and fired, even though bullets hit windshield of car and defendant insisted he only intended to scare victim); Spivey v. State, 436 N.E.2d 61, 63 (Ind. 1982) (affirming attempted murder conviction and dismissing defendant's contention that he merely intended to scare employees when he deliberately used "a deadly weapon in a manner reasonably likely to cause death").

[6] On appeal, Coleman does not contest the number of convictions (which corresponds to the number of officers fired upon), but rather the intent necessary for any of the convictions. Having heard the evidence and reconsidered his findings, the trial judge expressly made no "specific finding" of the number of times Coleman fired his weapon. It is not, in any event, a dispositive point given the well-known ability of a single bullet to wound more than one victim. See, e.g., People v. Smith, 124 P.3d 730, 738 (Cal. 2005) (observing that the "intent to kill two different victims can be inferred from evidence that the defendant fired a single shot at the two victims, both of whom were visible to the defendant" (citation omitted)).

latitude," <u>Siquina</u> , 28 Va. App. at 700, 508 S.E.2d at 353 (citation omitted), when it inferred Coleman's intent in this case.

Coleman objects to this reasoning, asserting that it erroneously rests on the doctrine of transferred intent. The doctrine of transferred intent, when applicable to consummated crimes like murder and malicious wounding, permits a factfinder to transfer a defendant's criminal intent to harm a targeted, but unharmed, victim to an untargeted, but actually harmed, victim. <u>See</u>, e.g., <u>Riddick v. Commonwealth</u>, 226 Va. 244, 248, 308 S.E.2d 117, 119 (1983). As a general rule, however, the concept does not apply to attempt crimes because the ineffectual act requirement ensures that there will never be a victim actually harmed in the intended manner. <u>See</u> <u>Crawley v. Commonwealth</u>, 25 Va. App. 768, 774, 492 S.E.2d 503, 505-06 (1997).

None of this reasoning, however, applies to this case. The evidence sufficiently proved Coleman intended to shoot the officers gathered in front of the nightclub and tried unsuccessfully to do so. The factfinder considered Coleman's hypothesis that he intended only to scare or injure only those patrons who might have been involved in the previous barroom fight. By finding the defendant guilty, the factfinder necessarily "found by a process of elimination that the evidence does not contain a reasonable theory of innocence.'" <u>Haskins</u>, 44 Va. App. at 9, 602 S.E.2d at 406 (citation omitted).[7] The trial court's judgment, therefore, did not rely upon any misapplied theory of the transferred intent doctrine.

-------

[7] Coleman's testimony at trial only served to further confirm his guilt. As factfinder, the trial court was at liberty to discount Coleman's self-serving explanations as little more than lying to "conceal his guilt," <u>Haskins</u>, 44 Va. App. at 10, 602 S.E.2d at 406, and could treat such prevarications as affirmative "evidence of guilty knowledge." <u>Covil v. Commonwealth</u>, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004); <u>Emmett v. Commonwealth</u>, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002); <u>Thomas v. Commonwealth</u>, 44 Va. App. 741, 755 n.5, 607 S.E.2d 738, 744 n.5, <u>aff'd</u> <u>en</u> <u>banc</u>, 45 Va. App. 811, 613 S.E.2d 870 (2005); <u>see</u> <u>also</u> <u>Wright v. West</u>, 505 U.S. 277, 296 (1992) (stating that, if the defendant's sworn testimony is disbelieved as a deliberate falsehood, the factfinder may consider the "perjured testimony as affirmative evidence of guilt").

III.

Finding the evidence sufficient to support Coleman's convictions for attempted malicious wounding and, necessarily as well,[8] his convictions for felonious use of a firearm, we affirm.

Affirmed.

_____

[8] Coleman challenges his eight convictions under Code § 18.2-53.1 for felonious use of a firearm, not due to insufficient evidence, but inasmuch as they rise or fall based upon the validity or invalidity of his attempted malicious wounding convictions. See generally Hopson v. Commonwealth, 15 Va. App. 749, 752-53, 527 S.E.2d 221, 223 (1993) (holding that where the "evidence did not prove the underlying felony, the firearm conviction cannot stand").