UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Chafin and Senior Judge Coleman
Argued at Richmond, Virginia


ALKEIM DWAINE HOWARD

MEMORANDUM OPINION[*] BY
v.      Record No. 2150-13-2      JUDGE TERESA M. CHAFIN
NOVEMBER 18, 2014

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SUSSEX COUNTY
W. Allan Sharrett, Judge

Wallace W. Brittle, Jr. (Railey and Railey, P.C., on brief), for
appellant.

Donald E. Jeffrey, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Alkeim Dwaine Howard ("Howard") was convicted by the Circuit Court of Sussex

County ("circuit court") of attempted capital murder of a law enforcement officer in violation of

Code §§ 18.2-25 and 18.2-31.[1] On appeal, he challenges the sufficiency of the evidence

supporting his conviction. Howard contends that the evidence presented failed to establish that

he had the specific intent to kill the law enforcement officer he attacked. For the reasons that

follow, we affirm the circuit court's decision.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Howard was also convicted of assault and battery of another law enforcement officer in
violation of Code § 18.2-57, malicious wounding in violation of Code § 18.2-51, and
misdemeanor destruction of property in violation of Code § 18.2-137. He does not challenge
these convictions on appeal.

## I.  BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).  So viewed, the evidence established that Howard had Thanksgiving dinner with his girlfriend, L.S., at her apartment on November 22, 2012.  Howard, L.S., and another guest consumed alcoholic beverages while the dinner was being prepared and during the dinner itself.

After dinner, L.S. briefly left the apartment when the other guest departed and attempted to purchase more alcohol at a nearby store.  When she returned to the apartment, she discovered that the apartment and her furniture had been damaged.  A glass table and other pieces of furniture were broken, and holes had been made in the walls.  Howard confronted L.S. about leaving the apartment with the other guest and attacked her.  He told L.S. that he would kill her, punched her in the face, choked her, and cut her with a knife.  L.S. eventually escaped to the bathroom of the apartment and called the police.

Howard left the apartment before the police arrived.  Although the police urged L.S. to leave the apartment, she refused to do so.  The officers then left the apartment to obtain a warrant for Howard's arrest.  After the officers left, Howard returned to the apartment and attacked L.S.  He choked L.S. and brandished two knives during this altercation.  L.S. again called the police.

Officer Victoria Byrd ("Byrd") and Deputy Charles Hudson ("Hudson") responded to L.S.'s second call.  Although Howard was not present at the apartment when the officers initially arrived, he returned to the apartment a short time later.  Howard was very angry, and he refused to comply with the officers' directions.  When the officers told Howard that he would need to

- 2 -

leave the apartment with them, he refused to leave and attempted to retrieve his personal belongings from the bedroom of the apartment. Fearing that Howard would retrieve a weapon, Byrd grabbed Howard and a struggle ensued during which Howard, Byrd, and Hudson fell into the bedroom. Hudson fell onto the floor on his back, and Howard and Byrd fell on top of him.[2]

Following the fall, Howard began choking Hudson. Howard wrapped his arms around Hudson's neck, interlocked his fingers behind Hudson's head, and applied pressure to the sides of Hudson's neck. Howard also pushed Hudson's head down into his chest by applying pressure with his own head. Hudson's face began to turn red, then reddish purple. His eyes became glassy, and his body started to "stretch out" or relax. Hudson told Byrd that he could barely breathe, and he testified at trial that he was beginning to "see stars" and lose consciousness.

Byrd repeatedly told Howard to release Hudson and physically attempted to break his grip on Hudson's neck. Byrd also warned Howard that he could be charged with attempted capital murder if he continued to choke Hudson. Howard refused to release Hudson and told Byrd that she needed to "let him go." Howard tightened his grip on Hudson's neck each time that Byrd told him to release Hudson.

Howard refused to release Hudson when Byrd threatened to use mace on him. Byrd then threatened to shoot Howard if he did not release Hudson. Howard again refused to release Hudson and told Byrd to "shoot him." Byrd shot Howard in the back near his left shoulder blade. Howard, however, continued to choke Hudson for around one minute after he was shot. Hudson estimated at trial that Howard choked him for at least two to three minutes.

At trial, Howard argued that the evidence failed to establish that he had the specific intent to kill Hudson. The circuit court disagreed with Howard's argument, reasoning that Howard

---

[2] Hudson dislocated his shoulder at some point during his struggle with Howard.

- 3 -

"was bent on one enterprise, and that was killing." The circuit court held that Howard used a specific chokehold to deprive Hudson of oxygen for an extended period of time and that a natural consequence of a prolonged deprivation of oxygen was death. Further, the circuit court found that Howard did not intend to release his grip on Hudson. Specifically, the circuit court held that it

> ha[d] no reason to see, ha[d] no evidence to believe, that the vice-grip tightening would [not] have continued to tighten even after Hudson had passed out, had Officer Byrd not acceded in the defendant's unjustified and unreasonable request. . . . The actions and the manner in which they were discharged, the defendant's resolve to be shot rather than to abandon the activity, leads the Court to believe that, indeed, he possessed the specific intent to kill . . . .

The circuit court convicted Howard of attempted capital murder of a law enforcement officer, and Howard appealed his conviction to this Court.

## II. ANALYSIS

When considering the sufficiency of the evidence on appeal, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (*en banc*). Under this standard, "a reviewing court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Crowder v. Commonwealth, 41 Va. App. 658, 662, 588 S.E.2d 384, 387 (2003) (quoting Jackson v. Virginia, 443 U.S. 307, 318-19 (1979)). It asks instead whether "'*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (quoting Jackson, 443 U.S. at 319). We do not "substitute our judgment for that of the trier of fact" even if our opinion were to

- 4 -

differ. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson, 443 U.S. at 319.

"Viewing the evidence in the light most favorable to the Commonwealth, as we must since it was the prevailing party in the trial court," Riner v. Commonwealth, 268 Va. 296, 330, 601 S.E.2d 555, 574 (2004), we conclude that the evidence presented supports Howard's attempted capital murder conviction. Code § 18.2-31(6) defines capital murder as "[t]he willful, deliberate, and premeditated killing of a law-enforcement officer . . . when such killing is for the purpose of interfering with the performance of his official duties."[3] Code § 18.2-25 prohibits attempts to commit capital murder offenses and classifies such offenses as Class 2 felonies. "An attempt to commit a crime is composed of the intent to commit it and a direct but ineffectual act done towards its commission." Coles v. Commonwealth, 270 Va. 585, 589, 621 S.E.2d 109, 111 (2005). Accordingly, "[a] person cannot be guilty of an attempt to commit murder unless he has a specific intent to kill." Haywood v. Commonwealth, 20 Va. App. 562, 565, 458 S.E.2d 606, 608 (1995).

"Intent is the purpose formed in a person's mind, which may be shown by circumstantial evidence including the person's conduct." Coles, 270 Va. at 590, 621 S.E.2d at 111. "[T]he fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998). "The question of [an appellant's] intent must be determined from the outward

---

[3] On appeal, Howard does not argue that Hudson was not a law enforcement officer or that his actions were not taken for the purpose of interfering with the performance of Hudson's official duties.

manifestation of his actions leading to usual and natural results, under the peculiar facts and circumstances disclosed. This determination presents a factual question which lies peculiarly within the province of the [fact finder]." Hughes v. Commonwealth, 18 Va. App. 510, 519, 446 S.E.2d 451, 457 (1994) (quoting Ingram v. Commonwealth, 192 Va. 794, 801-02, 66 S.E.2d 846, 849 (1951)).

On appeal, Howard argues that the evidence presented failed to establish that he had the specific intent to kill required for an attempted capital murder conviction. While Howard concedes that he acted unlawfully, he contends that he only choked Hudson in an attempt to escape from the officers. Howard argues that while he intended to collect his belongings and leave the apartment, he did not intend to kill Hudson. Howard's actions and the circumstances of this case, however, belie his argument.

Initially, we note that the events that led to the officers' presence at the apartment implied that Howard intended to act violently. Howard had been drinking alcohol, and was angry and belligerent when the officers arrived. At that time, he had already punched, choked, and cut his girlfriend and significantly damaged her furniture and apartment.

Although Howard initially told the officers that he did not want to hurt them, he proceeded to apply a specific chokehold on Hudson to cut off his supply of oxygen for an extended period of time. Hudson testified that he could barely breathe due to this chokehold and that he was beginning to lose consciousness when Byrd shot Howard. Hudson also testified that Howard continually tightened his grip on his neck, and refused to release him despite Byrd's commands and threats. These actions imply, at a minimum, that Howard intended to harm Hudson.

- 6 -

Moreover, even if Howard choked Hudson until he lost consciousness, he still would have been apprehended by Byrd. In light of these circumstances, the circuit court reached the reasonable inference that Howard intended to use Hudson as a bargaining chip to facilitate his escape from the officers. Howard intended to choke Hudson until Byrd let him escape. When Byrd told Howard to release Hudson, Howard responded by asking her to let him leave the apartment. When these negotiations failed, Howard tightened his grip around Hudson's neck and applied more pressure.

As noted by the circuit court, no evidence suggested that Howard would have released Hudson if Byrd did not allow him to escape. Howard continued to choke Hudson despite multiple threats from Byrd. Byrd warned Howard that he could be charged with attempted capital murder, and threatened to use mace on him and to shoot him if he did not release Hudson. Howard, however, was not dissuaded by these consequences. Howard literally would have rather been shot than release Hudson, and he continued to choke Hudson after Byrd shot him.

As previously stated, a "fact finder may infer that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody, 28 Va. App. at 706-07, 508 S.E.2d at 356. In the present case, Howard intended to choke Hudson and thereby deprive him of oxygen for a prolonged period of time until Byrd agreed to release him. Death is a natural consequence of a prolonged period of oxygen deprivation, and Howard leveraged this consequence in his stand-off with Byrd. The circuit court could reasonably infer that Howard intended the consequences of his actions, and therefore, that he intended to kill Hudson if Byrd did not allow him to escape.

Howard argues that his case is similar to Haywood, another case where the appellant was charged with attempted capital murder of a law enforcement officer based on his conduct while

trying to escape police officers. In Haywood, the appellant attempted to escape from police officers by driving his car through two roadblocks. See Haywood, 20 Va. App. at 564, 458 S.E.2d at 607. Although two police officers blocked the road on which the appellant was traveling with their police cars, the appellant did not slow down as he approached the road blocks and the officers moved their cars to avoid a collision. See id. This Court held that the evidence did not establish that the appellant had the specific intent to kill the officers and that it was "just as likely" that the appellant drove his car toward the roadblocks in an attempt to avoid police apprehension. See id. at 567-68, 459 S.E.2d at 609.

The facts of the present case distinguish it from Haywood. While the appellant in Haywood drove his car toward other cars in a manner that would have inevitably caused a collision, Howard choked a police officer. In Haywood, the police officers may or may not have been injured in the potential collisions. They were protected to some degree because they were inside of their police vehicles. In the present case, however, Hudson was not protected from Howard's attack. Howard was lying on top of Hudson, and he had him in a specific chokehold. Hudson would have died if Howard continued to choke him for a prolonged period of time. Furthermore, the appellant in Haywood could have escaped if he avoided the roadblocks. On the contrary, Howard would have been apprehended by Byrd even if he totally incapacitated Hudson with his chokehold.

Holley v. Commonwealth, 44 Va. App. 228, 604 S.E.2d 127 (2004), is more instructive than Haywood in the present case. In Holley, the appellant was charged with attempted malicious wounding of a law enforcement officer after he tried to escape from police officers by driving a van through heavy traffic. See id. at 231-32, 604 S.E.2d at 128-29. An officer eventually positioned his vehicle directly in front of the appellant, got out of the vehicle, and

drew his weapon. See id. at 232, 604 S.E.2d at 129. The appellant then steered the van directly toward the officer and accelerated. See id. Like the appellant in Haywood, the appellant in Holley argued that he did not specifically intend to harm the officer and that he only drove toward the officer in an attempt to escape from the police. See id. at 233, 604 S.E.2d at 129.

This Court disagreed with the appellant's argument, reasoning that "[w]hile . . . [the appellant] clearly sought to escape apprehension, the evidence in this case further prove[d] his intent to injure [the officer] in the process of doing so." Id. at 235, 604 S.E.2d at 130. "The fact that [the appellant] may have been attempting to escape . . . is not inconsistent with the equally reasonable hypothesis that he was attempting to do so by running over [the officer]." Id. at 235-36, 604 S.E.2d at 130-31. This Court affirmed the appellant's conviction, and held that accepting the appellant's hypothesis that he was trying to escape did not exclude the hypothesis that he intended to do so by injuring the officer. See id. at 237-38, 604 S.E.2d at 131-32; see also, Hughes, 18 Va. App. at 530-31, 446 S.E.2d at 463 (Coleman, J., concurring) ("A person may commit a crime with more than one purpose, and the fact that the act is done with two or more specific objectives does not mean that the Commonwealth has failed to prove the specific intent to commit the charged crime.").

While Howard may have choked Hudson in an effort to escape the police officers, his intent to escape did not negate his intent to kill Hudson in the process. The evidence of the present case established that Howard intended to choke Hudson for an extended period of time and that he did not intend to release Hudson unless Byrd allowed him to escape. The circuit court could infer that Howard intended the natural consequences of his actions, and the natural consequence of choking Hudson for a prolonged period of time was his death. Accordingly, the circuit court could infer that Howard intended to kill Hudson. As Howard's attempted capital

murder conviction was supported by the evidence presented in this case, we affirm the circuit court's decision.

Affirmed.